Argued and submitted May 4, reversed December 9, 1970,
opinion modified; petition for rehearing denied
April 21, 1971

SCHROEDER ET AL, *Respondents*, v.
SCHAEFER ET AL, *Appellants*.
477 P2d 720
483 P2d 818

*Harold A. Fabre*, Pendleton, argued the cause for appellants. On the brief were Fabre & Ehlers, Pendleton.

*W. F. Schroeder*, Vale, argued the cause for respondents. With him on the brief were D. S. Denning, Jr., Vale, S. Ben Dunlap, Herbert W. Rettig, and Richard Rosenberry, Caldwell, Idaho.

Before McALLISTER, Presiding Justice, and SLOAN,*

* Sloan, J., resigned September 30, 1970.

O'Connell, Denecke, Holman, Tongue and Howell, Justices.

HOLMAN, J.

This was a suit brought to secure a judgment on a contract for attorneys' fees and to foreclose an attorney's lien on real property. Defendants have appealed from a decree of the trial court awarding judgment to plaintiffs in the sum of $31,275 and foreclosing the lien in that amount upon the real property of defendants.

The defendant Elizabeth Rose Schaefer was the youngest daughter of Tom Bailey, who died a resident of Idaho and who left an estate in both Idaho and Oregon. The defendant Dennis Schaefer is her husband. Mr. Bailey and his wife had executed identical wills, without any disclaimer that they were reciprocal, which left all of their property to the other, and to their five living children and the descendants of a deceased child in six equal shares upon the death of the survivor. Mrs. Bailey predeceased Mr. Bailey. Subsequent to her death, Mr. Bailey executed a new will in which he left to Mrs. Schaefer extensive Oregon real estate which constituted the largest part of his estate. The balance was left to his heirs in six equal shares as before.

Some of the heirs instituted a suit against the executrix and the Schaefers to invalidate the will. This suit subsequently became two suits: one asserting a breach by Mr. Bailey of a contract between him and his wife to leave wills treating the children equally; and the other asserting that Mr. Bailey was mentally incapacitated at the time of the execution of the will.

The will had been drawn by Dunlap, Rettig and Rosenberry, a firm of Idaho lawyers who are among the plaintiffs in the present case. They represented the executrix in the probate of the will in Idaho. Ancillary probate was commenced in Oregon by the same executrix in which she was represented by an Oregon lawyer. The litigation to invalidate the will was also commenced in Oregon, presumably, because this was the situs of the real property which was the subject of the specific devise to Mrs. Schaefer.

In the meantime, the Idaho firm of attorneys had been representing Mr. and Mrs. Schaefer in various matters. Mr. and Mrs. Bailey had deeded to Mrs. Schaefer other property in Idaho in which they reserved a life estate. The Idaho firm brought a statutory proceeding to establish the death of the Baileys and to clear Mrs. Schaefer's title to the property. They were negotiating a lease for the Schaefers on part of this property. They represented them also in an action on a check which the Schaefers had received from one of Mrs. Schaefer's brothers and which represented the purchase price of some horses belonging to Mrs. Schaefer. Admittedly, an attorney-client relationship existed between the Idaho firm and the Schaefers at the time of the commencement of the litigation to invalidate the will.

After the litigation concerning the will was filed, the Idaho attorneys informed the Schaefers of it, and told them that they, together with the lawyer for the Oregon estate, were representing the executrix in the defense of the litigation. The Schaefers, by telephone, asked the Idaho firm to do whatever was necessary to protect their interests. No agreement was made at that time, however, concerning fees. Shortly thereafter, the Idaho firm wrote to the

Schaefers and suggested the hiring of the other plaintiffs, Schroeder and Denning, a firm of Oregon lawyers, to represent the Schaefers in the will litigation in Oregon. The Schaefers acceded to this, and a fee was subsequently negotiated by the Idaho firm which was to be paid by the Schaefers to the Oregon firm. The fee was contingent upon the successful defense of the specific devise and was 25% of the value of the Oregon real estate specifically devised to Mrs. Schaefer, plus 25% of the income she actually received therefrom during the periods of probate and litigation. The Oregon and Idaho firms had an agreement that any fee which was received for the defense of the law suits by the Oregon firm would be divided equally between them.

The two cases contesting the validity of the will were subsequently consolidated for trial. They were tried in two days' time in Malheur County, Oregon, and resulted in the will's being upheld. Thereafter, there was a lapse of a long period of time during which both the Idaho and Oregon firms attempted to secure the distribution of Mr. Bailey's Oregon estate and to exempt the income of the specifically devised real property from the cost of administration and the taxes upon the estate. In June 1967, prior to the settlement of the estate, a new arrangement was entered into between the Oregon attorneys and the Schaefers for the dollar value of the fees which would be paid to the Oregon firm for the successful defense of the litigation. It set the fees at $31,275, which was 25% of the value at which the Oregon real estate devised to Mrs. Schaefer was appraised in Mr. Bailey's estate. It also set a specific amount for the work thus far done in attempting to salvage the income from the devised property and in attempting to secure an order

of distribution. It set an hourly fee for further services in this connection. The Oregon lawyers waived any interest in the income from the specifically devised property accruing during litigation or probate. All sums have been paid under that agreement except for the amount of $31,275.

Defendants contend the original agreement with the Oregon lawyers for fees was not valid. They claim that the Idaho attorneys made misrepresentations to them and failed to disclose relevant information to them. They also claim the fee was exorbitant.

■ We will dispose of some of the issues summarily. First, there is no basis in the evidence for the defendants' contention that the seriousness of the litigation was overemphasized to them. Neither do we believe there is any basis for the defendants' complaint that the possibility of a set fee, rather than of a contingent fee, was not discussed with them. The Idaho attorneys and the defendants were aware, because of the past dealings between them, that the defendants were familiar with the set and contingent methods of hiring attorneys. The evidence also indicates that defendants were without ready funds with which to pay a set fee of the size that could be anticipated for the type of litigation involved. We conclude also that the amount of the fee alone is not per se unconscionable.

Defendants' other contentions concerning misrepresentation and withholding information are not so easily disposed of. Defendants contend the fee was represented to them as being under that normally required in cases of this kind by the provisions of the Oregon State Bar Schedule of Minimum Fees and that this representation was not true. In addition, they

also assert they were not told by the Idaho firm that it had a 50% interest in the fee they were negotiating for the Oregon firm.

All agree that at the time of the negotiations, the relationship of attorney and client existed between the defendants and the Idaho firm. Such a relationship existed not only because of unrelated business but because the Idaho firm had undertaken to protect the Schaefers' interest in the present case. The Oregon attorneys had no part in negotiating with the defendants for the fee. After consulting with the Idaho firm concerning a fee which they considered to be reasonable, the Oregon lawyers left to the Idaho firm all negotiations with the defendants concerning compensation.

██ Before considering the evidence, we will review the law relative to a lawyer's duty to a client when advising the client concerning a subject matter in which the lawyer has an interest. The following language from *Allstate Insurance Company v. Keller*, 17 Ill App2d 44, 149 NE2d 482, 486 (1958) is appropriate:

> "* * * [A]n attorney is required to disclose to his client all facts and circumstances within his knowledge, which, in his honest judgment, might be likely to affect the performance of his duty for that client. * * * A client may presume from an attorney's failure to disclose matters material to his employment that the attorney has no interest which will interfere with his devotion to the cause confided in him, or betray his judgment * * *."

Also, the following language is found in canon number six of the American Bar Association Canons of Professional Ethics:

> "It is unprofessional to represent conflicting

interests, except by express consent of all concerned given after a full disclosure of the facts * * * "

While the illustration given in the canon concerns the attorney acting for the conflicting interests of a third party, the language is equally applicable where the lawyer is acting in his own interests.

■ The majority rule is that a fee contract may be made between an attorney and his then-client. However, in such circumstances, the lawyer has the burden of showing that he used no undue influence, made no misrepresentation, and that he gave his client all of the information necessary to a fair decision by the client. *See* cases cited in Annotation entitled Validity and Effect of Contract for Attorneys' Compensation made after Inception of Attorney-Client Relationship, 13 ALR3d 701, 731 (1967). It is clear that if misrepresentations were made as to the propriety or usualness of the fee, or if the Idaho firm did not inform the Schaefers that they had an interest in the fee which they were negotiating with the Schaefers for the Oregon firm, the standards of conduct for an attorney as above set forth were not complied with.

We will now review the evidence, most of which was written correspondence, in an attempt to apply the above rules to it. Both the Idaho firm and the Schaefers were aware that litigation of some kind to invalidate the effect of the will was imminent. One of the heirs had called the Schaefers and had asked if they would consent to setting the will aside. A lawyer for one of the heirs had been to see the Idaho firm concerning the circumstances surrounding the execution of the will which the Idaho firm had drawn.

Prior to the filing of the litigation questioning

the will, the Idaho firm had written to the Schaefers concerning the collection of the check which had been given to the Schaefers by another of the heirs in payment for horses belonging to Mrs. Schaefer:

> "Concerning the check given to you by Walt, of course, *we can not represent you in an action in Oregon since we are not licensed to practice in the State of Oregon.* If you want, I will contact Mr. Donegan and advise him of the situation with Walt, and perhaps he can do something about this * * *." (emphasis ours.)

After the litigation challenging the will had been filed in Oregon, the Idaho firm wrote to the Schaefers, as follows:

> "Colleen [the executrix in both Idaho and Oregon] and you folks are named as the defendants in the case. We are taking care of Colleen's interest with the help of Mr. Harry Spencer of Burns, and are taking steps to appear in the action and bring the same to issue. I think it is best that you and your wife also appear in the action and make a defense to the claim stated. It is not proper for an Attorney to solicit business from prospective clients, and I certainly do not intend to do so by this letter. However, if you wish us to represent you along with Colleen in this matter, you can advise us at once and we will appear for you in the case. Since your defense will be basically the same as Colleen's it should save some duplication of work and expense.
>
> "Please do not feel that you are obligated in any respect to retain this firm or any other firm, and feel free to hire any other Attorney that you may want to in this action.
>
> "I merely wish to make it known to you that we are available, and I feel that since we have been working with you in the past, we should hold ourselves open to you if you desire our assistance.

"Please advise as soon as possible so that time does not run out for your appearance."

Subsequent to this communication, there was a telephone conversation between the Idaho firm and the Schaefers. Mr. Schaefer told the Idaho firm to "* * * do whatever has to be done to keep it [the will] from being broken * * *." Thereafter, a member of the Idaho firm wrote to the Schaefers:

"Wednesday and Thursday I was at Burns in the matter of the contest of your father's will for a conference with Mr. Spencer, an attorney there who is handling the matter with us. Mr. Spencer and our firm will appear in behalf of Colleen as Executrix of the estate. As heretofore stated to you by Mr. Rettig, our judgment was that you should have separate counsel to appear for you as one of the defendants. This was confirmed in my own mind by the briefing I have done and the trip to Burns for conference with Mr. Spencer. There is too much involved in this estate to take any chances and you are, of course, the chief beneficiary. Furthermore, we are determined to do everything we can to see that your father's wishes are carried out.

"* * * * *

"After considering all phases of the question I decided that we should employ Mr. W. F. Schroeder, of Vale, Oregon, to represent you. This, as I understand it, is in accordance with my authorization to do what I thought was best about procuring an attorney. I have known Mr. Schroeder for many years and his firm and ours have worked together over the years in various matters. He is highly thought of, aggressive and a conscientious workman. We are going to have a real battle in this matter, and by reason of my unfamiliarity with the Oregon laws and procedure, and the requirement of the law, it was necessary for me to associate an Oregon lawyer with us.

"* * * * *

"Of course, we will work and associate with Mr. Schroeder on your case and render all possible assistance to him."

There then was the following exchange:

Letter to Idaho firm from Schaefers:

"We received your letter today in which you asked about hiring Mr. Schroeder to represent us in this will contest business.

"This is alright [sic] with me. Will your office keep us informed as to what is happening anyhow?

"I did want you to do what you feel is best, so am perfectly satisfied with this decision."

Letter to Schaefers from Idaho firm:

"Thank you for your letter of August 25 in the above entitled matter. I will certainly keep you informed of developments as the case unfolds.

"At this time, we are in the process of settlement of certain legal questions. We will have an argument at Burns on the 14th. This is not a trial and no testimony will be taken. That will come later after the pleadings have been settled.

"* * * * *."

Subsequently, the Idaho firm wrote to the Schaefers a long, three-page letter, reviewing a hearing on preliminary matters that transpired in the Oregon litigation and the firm's participation therein in which "our opponents" are mentioned. Then there is the first mention of a fee.

"* * * * *.

"I have been contacting witnesses in this area endeavoring to find out facts which will help us in this case. So far I have been unable to find anyone who believes your father was an incompetent at any time before he died. And we have received some additional assistance from other witnesses which I think will aid your cause considerably. Be

assured, however, that we have a fight on our hands and as in any law suit, the issue is always in doubt until the Court rules. There is no such thing as a sure law suit. The Judge and I are both gratified with your concurrence in the hiring of Mr. Bill Schroeder of Vale, Oregon to represent your interests in this case. He is an outstanding trial man and well known in eastern Oregon for his excellent work. Mr. Gronso is also highly regarded in the practice and for this reason it became necessary to have the very best legal talent available to help you in this matter.

"During my trip to Burns I discussed the matter of Mr. Schroeder's fee for representing you in this matter. He showed me the Oregon minimum bar fee schedule which is the fee fixed by the Oregon State Bar Association which any lawyer should charge in connection with any legal matter he is handling. In this case the fee would be fixed upon a continguency [sic] that is, the fee to be paid Mr. Schroeder would be continguent [sic] upon his winning the case for you, and if he was not successful in winning the case then you would owe him nothing. The contingency upon which he proposes to handle this matter for you is on the basis of twenty-five per cent (25%) of the value of the Hermiston and Stanfield properties plus any income therefrom for the period of time involved. In checking the fee schedule he is about five per cent (5) below the actual minimum recommended schedule in Oregon which is thirty per cent (30%) in these matters. While this might seem considerably high to you, I can assure you it is not high for the caliber of legal talent in this case, and I am sure that Mr. Gronso for the other parties is handling the case on probably the same contingency. I think it is further reasonable for the reason that it may be that two separate trials may be necessary to dispose of this matter finally, and there may also be an appeal in the case as well, but of course this is looking at the future somewhat. The

appeal would cost you no more in the way of a higher percentage of the contingency, and Mr. Schroeder would have to follow the case through to its conclusions for the same contingency regardless of the amount of pencil work and labor involved. Arrangements satisfactory to you can be worked out for payment of any fees.

"I hope that this agreement will be all right with you, and for my part I think it is not unreasonable in line of the amount of property involved, and the type of litigation this case is. If it is agreeable with you I wish you would please advise me, and a formal contract will be forwarded to you for your signature. The contract will be directly with Mr. Schroeder's office, since it is possible that Mr. Dunlap will have to be a witness in this suit. We will of course work with Mr. Schroeder closely in this case, and will lend him every possible assistance in your behalf.

"We will also be present at the trial to assist him in so far as it is possible to do so. Our participation in the case, however, will not be of any additional expense to you. If you have any questions or would like to discuss this matter, I wish you would please pick up the phone and call me collect, and I can perhaps straighten out any questions you may have on this matter. We have the greatest regards for your feelings in this case and want you to be completely satisfied with all arrangements, so please feel free to call us."

The Schaefers accepted the proposal, as follows:

"We received your letter the other day. Thank you for giving us such a report on what has been happening. It is very much appreciated. Also I want to thank you for your interest in this, on our behalf.

"The twenty-five per cent fee for Mr. Schroeder will be alright [sic]. It does seem like an awful lot of money, but I guess that is all we can do. We

are satisfied. Please have Mr. Schroeder send us the contract.

"* * * * *

"As far as I can see, everything seems to be going along fine and we are satisfied with all the things you are doing.

"I don't know if you can do anything about this or not, but I thought I would tell you so you could tell the judge if necessary. That is simply that if we were to be in court on a Saturday we would not be able to be there.

"* * * * *"

Accompanying this letter was a note from Mrs. Schaefer, telling about a conversation concerning the property which she had had with her parents prior to their death. The contract, drawn as proposed, was then forwarded to the Schaefers with the following letter from the Idaho firm.

"I enclose herewith a letter addressed to Schroeder & Denning, Vale, Oregon, which was prepared by them, setting forth the agreement for the contingent fee to be paid. Will you please sign the agreement and return to me for Schroeder & Denning?

"Also, I am advised that the attorneys for the contestants will undoubtedly file some further proceedings in this matter, due to an anticipated ruling by the District Court. If so, please send all papers received by you to us promptly upon their receipt as our time for appearing after the papers have been served is, of course, limited.

"Within the next few days we will probably send to you another letter for signature as to your choice of attorneys to represent you before the court. This is to prevent duplicate charges for services of the various attorneys. In other words, you are paying your own attorney fees as per the contingent fee contract with Schroeder & Den-

ning. We do not want Mr. Spencer [the lawyer probating the estate in Oregon] to be in a position to make a claim against your part of the estate for any services he renders in the case.

"* * * * * *"

The contract was signed and returned to the Idaho firm by the Schaefers.

■ It is our conclusion from the foregoing evidence that the Idaho firm did not make a full and complete disclosure required of their fiduciary relationship with the Schaefers. The correspondence is ambiguous because it was known by all that the Idaho firm was representing the executrix in contesting the litigation. There is nothing that makes it clear to the Schaefers that the Idaho firm was acting as attorneys in the litigation for the Schaefers in addition to acting as counsel for the executrix and, therefore, would expect to have an interest in the fee which they were negotiating for the Oregon firm. The fee arrangement was held out to the Schaefers as an advantageous one. It may have been. However, in judging the extent to which they could rely on that recommendation and in deciding whether they should seek a more advantageous arrangement, the Schaefers were entitled to know of the Idaho firm's interest in the contract which it was recommending. In addition, in judging whether they would accept the Idaho firm's assessment of Mr. Schroeder's ability, the defendants were entitled to consider whether the recommendation stemmed from the fact that the Idaho firm had a fee arrangement with him or whether this was their actual assessment of his ability. Mr. Schaefer, on cross-examination, testified as follows:

"Q. Did you or did you not, from the moment you received that letter of August 21, believe that

Mr. Rettig and Mr. Dunlap were your lawyers in the case, and participating with me?

"A. No. I felt my lawyer was Mr. Schroeder, and they were working with Mr. Schroeder getting a fee from the estate to help carry Colleen's end of it on. We were supposed to provide our lawyer, which was Mr. Schroeder, and the two together were going to fight this lawsuit.

"Q. So you believed that I, Mr. Schroeder, was your lawyer, and that the Dunlap firm was not? Is that right?

"A. In a legal way, yes, but the Dunlap firm is still the one I talked to, because they were the only people I knew."

We do not believe that the plaintiffs carried their burden of demonstrating that such was not the case.

In view of our conclusion, it is unnecessary to decide whether the recommended contingency rates specified in the Oregon State Bar Minimum Fee Schedule were intended to apply to the defense of cases of the present kind and thus whether a misrepresentation in this respect was made to the Schaefers.

The foregoing determination does not completely solve the problem. After approximately 2½ years of attempting unsuccessfully to prevail upon the attorney probating the Oregon estate to set aside to the Schaefers the considerable income from the real property specifically devised to Mrs. Schaefer, a new contract for attorneys' fees was entered into between the Oregon firm and the Schaefers. This contract is the basis for the present suit. The plaintiffs contend that any deficiency in the Schaefers' knowledge of the Idaho firm's interest is now irrelevant because the Schaefers entered into the second agreement with

knowledge that the Idaho firm had an interest in the fee which the agreement covered.

The evidence discloses that at the time of the second agreement, the Schaefers, beyond any doubt, were aware that the Idaho firm had an interest in the Oregon firm's fee. A mortgage had been submitted to the Schaefers for their signature, the purpose of which was to secure the fee. This mortgage named as mortgagees both the Oregon and Idaho attorneys. The Schaefers declined to sign the mortgage until there was an order of the court distributing the property to them and because they thought that they could borrow money at a cheaper rate of interest than the instrument provided. The defendants contend that the second agreement was no better than the first unless the Schaefers were aware at the time of the second agreement that they were entitled to have the first agreement invalidated.

The evidence discloses that when the Schaefers were sent the mortgage, which they refused to sign, they took it to a lawyer in South Dakota and discussed with him the propriety of the fee and whether the mortgage should be signed. The lawyer told them not to sign the mortgage until the real property had been distributed to them and, in addition, he told them that he could not advise them on the propriety of the fee because he was not familiar with the Oregon fees, law or procedure applicable to the litigation. There was no indication that there was any discussion with the lawyer concerning the effect of the Idaho firm's failure to disclose their interest in the fee or that the lawyer was even aware that such was the case. When the second contract was sent to the Schaefers for their signature, they were invited to take it to their South

Dakota lawyer and to discuss it with him, but they did not do so.

■ We hold that the second agreement is no better than the first, absent a showing that at the time the second agreement was entered into the Schaefers were aware of the original agreement's vulnerability. There is no such proof and the burden of so proving is upon the plaintiff.

The facts in this case are similar to those in the case of *Boyle v. Beltzhoover*, 196 SE 503, 119 WVa 626 (1938). Boyle hired Beltzhoover, an attorney, to assist him in the reorganization of a venture to operate a race track. After the enterprise was embarked upon, they entered into a contract for Beltzhoover's compensation which resulted in an agreement to transfer to Beltzhoover stock in the enterprise. The contract was not enforceable by Beltzhoover because of advantage taken by him of his position as Boyle's attorney. Boyle brought a suit to recover the stock and Beltzhoover contended that Boyle had subsequently ratified the transaction by issuing the stock to him. The court rejected the contention with the following language:

"* * * Ratification of a contract tainted with any weakness sufficient to destroy it must be a solemn and deliberate act, and where a waiver of a right to attack the contract for such weakness is relied upon, it must have been made with full knowledge of the rights intended to be waived. * * * It must also be borne in mind that a confidential relationship between Boyle and Beltzhoover still continued, whether that continuance may be laid to the original employment or to that created by the contract claimed to have been ratified. * * * Holding as we do that the execution of this contract was, considering the relationship of

the parties, obtained by improper means, we are not disposed to weaken the effect of that ruling by holding that an agreement obtained under such conditions can be held to be ratified, except upon the clearest proof of every element necessary to make that ratification effective, such as freedom of action, full understanding and kindred requirements. * * * It requires a stronger proof of ratification in the case of a fiduciary or confidential relationship than where parties are dealing upon an equal footing.

"* * * The burden of showing ratification under circumstances when Boyle was free to act was on Beltzhoover, and that burden has not been met * * *." 196 SE 503 at 510-512.

The burden was upon plaintiffs in the instant case to show that the Schaefers realized the weakness of the original contract at the time they entered into the second agreement. We do not believe such a burden was carried.

This opinion is without prejudice to the rights, if any, which the plaintiffs may have to recover upon quantum meruit.

The judgment of the trial court is reversed.

### ON PETITION FOR REHEARING

W. S. Schroeder, D. S. Denning, Jr., Vale, S. Ben Dunlap, Herbert W. Rettig, and Richard Rosenberry, Caldwell, Idaho, for the petition.

Harold A. Fabre, and Fabre & Ehlers, Pendleton, contra.

HOLMAN, J.

Plaintiffs filed a petition for rehearing. Among the points raised was a contention that, after refusing to enforce the written contract, this court erred in failing to determine the reasonable value of plaintiffs' services or, in the alternative, in not remanding the

case to the trial court for that purpose. As a consequence of this contention, the court requested and received a response from the defendants to which plaintiffs replied.

The immediate problem is whether the pleadings and the proof are sufficient to put *quantum meruit* in issue. This court has many times held that an action on a specific contract is insufficient to support a determination of reasonable value. *Bahler v. Fletcher*, 257 Or 1, 474 P2d 329, 331 (1970); *Flaherty v. Bookhultz et al*, 207 Or 462, 483, 291 P2d 221, 297 P2d 856 (1956); *Williams v. Ledbetter*, 132 Or 145, 150, 285 P 214 (1930).

■ However, we have come to the conclusion that the rule of *Bahler*, *Flaherty*, and *Williams* should be qualified. The purpose of pleadings is to give notice of the issues to be litigated so that appropriate defenses can be prepared. Therefore, in a situation in which no surprise or prejudice has been suffered by the opposing party, the unqualified and strict application of the rule in question would seem to be inappropriate. This view has been adopted by the courts of both Idaho and North Carolina. *H. J. McNeel, Inc. v. Canyon County*, 76 Idaho 74, 277 P2d 554 (1954) and *Martin Flying Svc. v. Martin*, 233 NC 17, 62 SE2d 528, 530 (1950). In *McNeel*, the Idaho court said as follows:

"* * * Respondent contends that plaintiff having pleaded and prosecuted its action upon an express contract, cannot now on appeal urge a right to recover on implied contract.

"* * * * *

"* * * Where a plaintiff pleads an express contract, but by proof establishes facts sufficient to support only an implied contract, he may recover upon the implied contract, in the absence of

surprise or prejudice to the defense * * *." 277 P2d 554 at 556.

ORS 16.660, which is made applicable to both suits① and actions, militates toward the same rule in Oregon. The statute provides:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

The defendants were not taken by surprise. In discussing the admissibility of evidence, defendants' attorney made the following statement to the trial court:

"I think if the Court reaches the point where it determines this on a quantum merit [sic] basis then I think this is an important fact to determine in the overall picture. I will put it that way."

Defendants' attorney, in cross-examining one of the plaintiffs, also stated as follows:

"Q  You understand that his Honor may reach a point where he is going to put a value on your services on a quantum merit [sic] basis?

"A  Yes.

"Q  And on that basis what do you think your time is worth?

"A  Quantum merit [sic] basis?

"Q  Yes.

"THE COURT: Do you mean on an hourly basis?

"BY MR. FABRE: (Continuing) Q On a hourly basis, yes, sir.

"A  We would try to get $30 per hour."

In addition, defendants used about six pages in their brief contending that the proof was insufficient to

---

① See ORS 16.010.

sustain a cause of action in *quantum meruit* for more than $7,500. Both parties put on expert testimony in addition to that quoted relative to the reasonable value of the services. The extent of services performed and the time involved were delved into minutely.

Defendants contend in their brief that the circumstances surrounding the execution of the express written contract should prevent plaintiffs from receiving any fee at all. They rely on the following language from 7 Am Jur 2d *Attorneys at Law* § 219:

> "A lawyer who does not at all times represent his client with undivided fidelity is not entitled to compensation for his services, even though his conduct was not intentionally prejudicial to his client's interest. An attorney who is guilty of actual fraud or bad faith toward his client, or who seeks to secure his personal advantage to the prejudice of his client, is not entitled to any compensation for his services. And a client may show as a defense to a claim for compensation that the attorney's services were worthless because of ignorance or negligence, although it should be remembered that an attorney is not an insurer of the result in a case in which he is employed unless he makes a special contract to that effect." (Footnotes omitted.)

■ We believe that this language is not applicable to the facts of the present case. The litigation was prosecuted with fidelity. Defendants received skilled, valuable, and successful services for which they should pay a reasonable fee. The purpose of *quantum meruit* is to prevent unjust enrichment at the expense of another.

Because the *quantum meruit* issue has been fully litigated and the testimony is all in the record,

we see no purpose to be served by further litigation. Therefore, we propose to dispose of the matter in conformance with our powers under Oregon Constitution, Am Art VII, § 3. Plaintiffs' testimony indicates that they devoted 586.18 hours of work to the Schaefer litigation. This testimony is attacked by defendants, who contend that some of the time was duplicated where two plaintiffs charged for doing the same thing at the same time. Defendants also claim that in some circumstances the time charged was excessive.

■ In some instances, defendants' complaints are justified and in others they are not. Although there is some distortion in the number of hours, we do not believe it to be large. We conclude that the legitimate number of hours involved in the litigation of the two cases for which a charge could be made was approximately five hundred. At $30 an hour, this would justify a fee of $15,000. However, there is another factor which should be considered, and that is the seriousness of the litigation as reflected by the amount of money involved. The ownership of five-sixths of $125,100 worth of real property was being decided. Having concluded that the number of hours expended by plaintiffs was substantially five hundred, and taking into consideration the value of the property involved, we believe a reasonable fee to be $20,000.

The judgment of the trial court and the prior opinion of this court are modified and the case is remanded to the trial court with directions to enter a judgment for plaintiffs in the sum of $20,000. Costs on appeal are awarded to the defendants.