Argued and submitted February 11, 1985, affirmed on appeal; reversed and remanded
on cross-appeal April 16, 1986

WELLS,
*Respondent - Cross-Appellant,*

*v.*

CARLSON,
dba Leisure Logging Company,
*Appellant - Cross-Respondent.*

(83-1404; CA A31828)

717 P2d 640

Thomas C. Thetford, Eugene, argued the cause for appellant - cross-respondent. With him on the briefs was Armstrong, McCullen, Percy & Philpott, P.C., Eugene.

Douglas A. Haldane, Eugene, argued the cause for respondent - cross-appellant. On the brief was Brent G. Summers, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warden, Judge.

WARDEN, J.

Joseph, C. J., dissenting.

## WARDEN, J.

Defendant Carlson[1] appeals from a judgment awarding plaintiff $928.20 as unpaid wages and $2,609.41 as attorney fees. Plaintiff cross-appeals, arguing that the trial court erred in not awarding him $4,284 as a civil penalty under ORS 652.150 for defendant's wilful failure to pay wages.

Plaintiff worked for defendant as a timber faller or "cutter" during the summer of 1982. He worked with a group of three to five other cutters which was loosely organized under the direction of a "bull buck," Mather, who acted as foreman for the employer. Each of the cutters signed a timber-cutting contract with defendant in which he is referred to as "contractor." The contract provided that a cutter would carry his own insurance and that neither party would "be held liable for the liabilities of the other party."

The cutters were to be paid on a piecework basis at $8.50 per thousand board feet. They were given draws of varying amounts at varying intervals. Sometimes the checks for the draws were delivered to individual cutters by a representative of the company and sometimes they were given to Mather, who then gave them to each cutter. No withholdings were deducted from the checks. The cutters complained about getting paid through Mather, because they thought him unreliable and did not trust him. In response to their complaints, plaintiff claims, representatives of Leisure Logging told them that they would be paid on the 10th and the 25th of each month at a draw rate of $130 a day, as the rigging crew was paid. That arrangement, which defendant denies, was never carried out.

Plaintiff and his cutting group worked on defendant's "Wilkins Way" tract, which was divided into four units. Plaintiff worked on three of them. He was paid in full for work done on the first two units, but neither he nor some of the other cutters were paid for work they performed on the third unit. Later, in the spring of 1983, plaintiff learned that one of the members of his group, Rondeau, had recently been paid by defendant for his work. Plaintiff made demands on Eads, a Leisure Logging employe, and defendant, for the amount due

---

[1]Service was never made on Greenland. Even though an order was made dismissing him from the case, that was unnecessary; he was never a party.

him for the 6-1/2 days that he had worked on the third unit. He testified that both men assured him that he would be paid, but he was not. The case was tried to the court, which found that plaintiff was an employe, that defendant owed him wages of $928.20 and that defendant did not wilfully withhold payment of those wages.

Whether a worker is an employe or an independent contractor is a question of law, if the facts are not in dispute. *Lamy v. Jack Jarvis & Company, Inc.,* 281 Or 307, 312, 574 P2d 1107 (1978). If as in this case, there is conflicting evidence about the facts of the relationship, the resolution of the conflict is for the trier of fact. *Nordling v. Johnston,* 205 Or 315, 283 P2d 994, 287 P2d 420 (1955). When the facts have been decided, their legal effect is a question of law. *Woody v. Waibel,* 276 Or 189, 554 P2d 492 (1976). At the close of plaintiff's case, defendant moved for what he designated "a directed verdict." We treat the motion as one for a judgment of dismissal under ORCP 54B(2). The motion was denied and that is assigned as error, as is the trial court's holding that plaintiff was an employe. The court did not err in denying the motion. *Castro and Castro,* 51 Or App 707, 713, 626 P2d 950 (1981).

We also conclude that the trial court's legal conclusion is correct. Although there are indicia pointing to an independent contractor relationship—the contract terms, lack of withholdings and irregular pay periods—they are more form than substance. Plaintiff was paid on a piecework basis for cutting trees. Defendant paid him in part in the form of draws, which were equivalent to paychecks. There was also evidence that, although the plan was never implemented, defendant agreed to pay plaintiff and the other cutters draws figured at $130 per day on a regular basis, just as it had paid the rigging crew. Furthermore, although defendant's power to fire plaintiff was never explicitly established, a fair reading of the record is that defendant had that power.

Defendant also assigns error to the trial court's failure to grant his motion for dismissal at the close of plaintiff's case because of the insufficiency of the evidence to establish a definite sum of money due. Plaintiff pled in *quantum meruit* for wages "at the agreed and reasonable rate of $142.80 per day." He put on evidence that a fellow worker

on the same job had been paid at that rate. He referred to Rondeau's check stub, "then determined the sum owed him by defendant by converting the scale figure contained on Rondeau's check stub into a figure based on man-days on the job." He calculated that he was owed 6-1/2 days times $142.80, or $928.20. Plaintiff argues that his testimony is substantial evidence to support the award of damages.

"Q. So you, have no idea what you cut or what was cut totally, do you?

"A. The only thing I saw was a check stub that Randy Rondeau had when he come out and told me he got paid, come by the house and told me he got paid. That's the only time I knew anybody got paid. If he hadn't told me, I wouldn't have known.

"* * * * *

"Q. Mr. Wells, I take it you didn't keep track of actually how many trees you cut? It was just you were working together and you say just whatever the board feet that were cut, that was divided among a number of cutters?

"A. Well, in man days, if I work on a unit for six and a half days, well, then whatever the scale comes out to. And this case, it come out to 142 per man days, then I would get six and a half times the man days, the wage for the one man day. And some worked like ten days. Some worked five days. Some worked one."

He also testified that payment was to be made on the basis of $8.50 per 1,000 board feet of logs cut and that he and his partner were "averaging between 20,000 and 30,000 a day." That testimony is not controverted. It would support a finding that he earned wages of $170 to $255 per day.[2] Although we might wish for more precise evidence of the exact amount of wages due plaintiff, the evidence that was received is sufficient to support the finding of the trial court in his favor.

■ The dissent implies that plaintiff cannot recover because he had pleaded a specific contract and has proved something else. We disagree, but even if plaintiff had pleaded an express contract, he would be still entitled to prove damages on a *quantum meruit* basis. *Schroeder v. Schaefer,*

---

[2] Because plaintiff had only pleaded the $142.50 figure as a reasonable daily wage, and because he did not move to amend his pleadings after the evidence came in, he could not recover more than the amount pleaded.

258 Or 444, 464, 477 P2d 720, 483 P2d 818 (1971); *see also N. Tillamook Sanitary v. Great American,* 46 Or App 173, 611 P2d 319, *rev den* 289 Or 588 (1980).

■■   Because plaintiff's evidence was sufficient, the trial court correctly denied defendant's motion to dismiss. We turn now to plaintiff's cross-appeal. The trial court denied plaintiff's claim for a civil penalty under ORS 652.150,[3] because it concluded that "defendant did not wilfully withhold payment of the wages, but did so under a misunderstanding." That statement indicates that the trial judge applied the wrong legal standard. An employer wilfully fails to pay when it does so intentionally, *i.e.,* knows what it is doing, intended to do it and is a free agent. *Sabin v. Willamette-Western Corp.,* 276 Or 1083, 1093, 557 P2d 1344 (1976); *Kling v. Exxon Corp.,* 74 Or App 399, 408, 703 P2d 1021 (1985); *Garvin v. Timber Cutters, Inc.,* 61 Or App 497, 500, 658 P2d 1164 (1983). Defendant knew that plaintiff had demanded payment for the 6-1/2 days that he worked and freely chose not to pay him. That failure to pay was wilful within the meaning of ORS 652.150, and the trial court must determine how much penalty plaintiff may recover on the basis of a calculated average daily wage.

Affirmed on appeal; reversed and remanded on cross-appeal.

**JOSEPH, C. J.,** dissenting.

It would be very nice if the law could support plaintiff's claim. I share the majority's view, unspoken, that plaintiff was cheated. I cannot share the majority's view that it is so easy for plaintiff to be made whole. Unhappily, in the words of the late Karl Llewellyn, "There ain't enough justice to go around, and the legal system exists for rationing it by appropriate standards." The majority thinks that plaintiff is entitled to win, and it cuts the law to fit that objective.

---

[3] ORS 652.150 provides:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employment of such employe shall continue from the date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing financial inability to pay the wages or compensation at the time they accrued."

There was *no* evidence introduced about how plaintiff arrived at the scale figure from Rondeau's check or that the figure is even the proper measurement of plaintiff's damages. All that Rondeau's check proves is what Rondeau's piecework earned him. It does not support the chain of inferences that plaintiff (and the majority) draw from it.

In some instances, like this one, it might be difficult for an employe seeking unpaid wages to prove the amount owing, because the employer might have kept inadequate records or even intentionally have obfuscated them. In cases where an employe's inability to prove damages arises from an employer's inadequate records, the employer should not be allowed to avoid a statutory wage claim because the claimant's evidence lacks the exactness of measurement that would be possible if the employer had kept the records required by law. *See Anderson v. Mt. Clemens Pottery Co.*, 328 US 680, 688, 66 S Ct 1187, 90 L Ed 1515 (1964). In the present case, plaintiff was an employe, and ORS 652.130[1] required defendant to provide him with a statement of scale on a monthly basis.

If plaintiff had attempted to ascertain whether defendant had records of the amount that he personally cut on the unit in question or any other record indicating the amount cut generally and had got that in evidence or had made a showing that such records were unavailable[2] to clarify or refute the

---

[1]ORS 652.130 provides:

"Every person engaged in the business of logging or obtaining or securing sawlogs, poles, spars, piles, cordwood, posts or other timber or forest products, or engaged in the business of manufacturing sawlogs or other timber into lumber, and employing one or more employes on a piece work scale or quantity wage basis, shall furnish such employes at least once monthly, a statement of scale or quantity produced by them to their credit, and shall pay all wages or amounts so earned and due and payable under the law regulating paydays."

[2]Plaintiff's pretrial request for production was rather extensive, requesting:

"Any and all checks, drafts, notes or other instruments written on the account of Leisure Logging Company made to the order of Lester L. Wells, Fritz Gaughn, Dean Lawson, Randy Rondeau, Jack Mather or Brian Barney during the calendar years of 1982 and 1983.

"Any and all books, records, financial reports, or other documents prepared or kept by Leisure Logging Company for accounting, payroll, or tax purposes during the calendar years 1982 and 1983.

"Any and all documents in the possession of Leisure Logging Company or Chase E. Carlson bearing the signature of Lester W. Wells, Fritz Gaughn, Dean Lawson, Randy Rondeau, Jack Mather or Brian Barney."

amount of plaintiff's wage claim, the burden might have shifted to defendant because of the statutory duty imposed by ORS 652.130. However, plaintiff made an inadequate attempt to prove the amount due him under the piecework contract. The underexplained calculation made on the basis of an unexplained scale figure on another cutter's paycheck stub that was not introduced in evidence does not constitute credible (or *any*!) evidence to establish the essential elements of a definite sum of money due from defendant for a definite amount of timber cut.[3] The court erred in denying the motion to dismiss.

I dissent, even though I wish that justice were as easy to dispense as the majority makes it.

---

At trial, plaintiff's attorney *complained* about defendant's failure to produce scale tickets under the request for production. Defendant admitted on cross-examination that he had records that would reflect scale figures for cutting done on the unit in controversy; however, plaintiff made no further effort to obtain those records.

[3]Plaintiff pleaded a *per diem* pay rate but tried to prove only a piecework rate. Maybe that sort of messiness is all right under the cases.