35 F.3d 570
 4 A.D. Cases 160
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eric S. DUTSON, Plaintiff-Appellant,
v.
FARMERS INSURANCE EXCHANGE, et al., Defendants-Appellees.
 No. 93-35205.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Sept. 9, 1994.
 
 1
 Before: TANG and WIGGINS, Circuit Judges, and HENDERSON*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff Eric S. Dutson ("Dutson") is afflicted with hemophilia and has been HIV positive for approximately five years. In December, 1986, he began working as a Farmers Insurance ("Farmers") agent. As a Farmer's agent, plaintiff sold several annuity and life insurance policies to his father, Zenos Dutson, including a flexible payment annuity ("FPA"). To avoid paying taxes on the sale of such annuities, Zenos and Eric Dutson agreed to transfer the FPA to a life insurance policy held by Zenos Dutson and use a loan from the policy to pay for the home. As part of this transaction, defendant New World Life issued a check payable to Zenos Dutson which was mailed to plaintiff. Upon receipt of this check, plaintiff signed Zenos Dutson's name to the back, deposited the check in his own client trust account, and used the proceeds to purchase two cashier's checks payable to New World Life.
 
 
 4
 Plaintiff sent the cashier's checks to New World Life with instructions that they be deposited in the life insurance policy. On May 10, 1990, Zenos Dutson went to defendants' office to obtain his anticipated policy loan check, and was told that defendants had decided to rescind the transaction. Upset at not receiving the check, Zenos Dutson signed an affidavit accusing his son of forgery.
 
 
 5
 That same day, defendants' employees confronted plaintiff about the transaction with his father and the affidavit of forgery. Plaintiff, who was recovering from surgery, first denied any wrongdoing. He insisted, alternatively, that it was his father's signature on the check, that his father knew plaintiff would receive the check and approved of the arrangement, and that the check was a personal one from his father. He then admitted that he had wrongly signed his father's name on the check, and had lied about the source of the funds as well as the signature. He did not disclose that he had retained $1,006.70 in his trust account. The meeting concluded with plaintiff resigning his agency agreement, which he subsequently withdrew. On May 15, 1990, Zenos Dutson disavowed the affidavit of forgery and stated that plaintiff was acting pursuant to his directions.
 
 
 6
 Defendants continued to investigate plaintiff's business practices. In July of 1991, several of defendants' employees again met with plaintiff and requested his resignation. This meeting concluded with plaintiff tendering his resignation as a Farmers agent. Plaintiff subsequently also withdrew this resignation and defendants issued a 90-day notice of termination. Plaintiff appealed his termination to a review board, which recommended in December 1991 that plaintiff be permitted to continue to act as a Farmers agent. In January of 1992, defendants accepted the recommendation. Plaintiff works as a Farmers agent today.
 
 
 7
 On March 24, 1992, plaintiff filed this action seeking damages for handicap discrimination, libel per se, breach of contract, and intentional infliction of emotional distress. On January 5, 1993, the trial court, Magistrate Judge John Jelderks presiding, granted defendants' motion for summary judgment on plaintiff's handicap discrimination and defamation claims. A jury trial of plaintiff's contract and emotional distress claims commenced on January 19, 1993. On January 29, 1993, the jury returned a verdict for defendants on both of these claims. Magistrate Judge Jelderks entered a judgment upon the verdict on February 4, 1993. On February 8, 1993, the district court entered a judgment in accordance with the order granting defendants' motion for summary judgment and the jury's verdict.
 
 
 8
 On appeal, plaintiff assigns error to the grant of summary judgment on his claims for handicap discrimination and defamation, to the failure to give a jury instruction on the tort of reckless infliction of emotional distress, to a jury instruction given on the taxation of annuities, and to the admission of witness testimony about the tax aspects of plaintiff's transactions. We have jurisdiction under 28 U.S.C. Sec. 1291 and 28 U.S.C. Sec. 636(c)(3). We review the grant of summary judgment under a de novo standard, and review the remaining rulings for abuse of discretion. Jones v. Union P.R. Co., 968 F.2d 937, 940 (9th Cir.1992) (grant of summary judgment); United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir.1989) (review of jury instructions); Higgenbottom v. Noreen, 586 F.2d 719, 722 (9th Cir.1978) (admission of witness testimony); Mosley v. Owens, 108 Or.App. 685, 816 P.2d 1198 (same).
 
 DISCUSSION
 
 9
 I. Plaintiff's Claim for Handicap Discrimination
 
 
 10
 Plaintiff contends the trial judge erroneously granted summary judgment to defendants on his state law claim for handicap discrimination. The district court granted defendants' motion for summary judgment on this claim on two independent grounds:
 
 
 11
 1. That there is no evidence that Farmers knew of plaintiff's handicap; and
 
 
 12
 2. That plaintiff is an independent contractor and therefore not subject to protection under the Handicapped Persons Civil Rights Act ("HPCRA"). Or.Rev.Stat. ("ORS") Sec. 659.400--659.435.
 
 
 13
 We first address the second ground. Plaintiff argues that he need not be an "employee" to bring a claim under the HPCRA, and then argues that, even if this were the case, the trial judge should not have found that he was an independent contractor as a matter of law.
 
 
 14
 1. Can Only "Employees" Bring Claim Under the HPCRA?
 
 
 15
 Sec. 659.425 of the Handicapped Persons Civil Rights Act ("HPCRA"), Oregon Rev.Stat. ("ORS") Sec. 659.400-659.435 makes discrimination on the basis of a physical or mental impairment an unlawful employment practice. Oregon's basic civil rights statute (ORS Chapter 659) defines an "employer" as follows:
 
 
 16
 As used in ORS 659.010 to 659.110 and 659.400 to 659.435, unless the context requires otherwise:
 
 
 17
 * * *
 
 
 18
 (6) "Employer" means any person, including state agencies, political subdivisions and municipalities, who in this state, directly or through an agent, engages or utilizes the personal service of one or more employees reserving the right to control the means by which such service is or will be performed.
 
 
 19
 ORS Sec. 659.010(6) (emphasis added).
 
 
 20
 In contrast, the HPCRA defines an "employer" as:
 
 
 21
 Any person who employs six or more persons and includes the state, counties, cities, districts, authorities, public corporations and entities and their instrumentalities, except the Oregon National Guard.
 
 
 22
 ORS Sec. 659.400(3).
 
 
 23
 Plaintiff argues that the definition of "employer" used in the HPCRA differs from the definition used in the basic civil rights statute because the Oregon legislature intended the HPCRA to provide protection beyond the traditional employer-employee relationship. However, the civil rights statute plainly states that its definition of "employer" is meant to control the HPCRA, through specifying: "[a]s used in ORS 659.010 to 659.110 and 659.400 to 659.435, unless the context requires otherwise."
 
 
 24
 Plaintiff seizes upon the phrase, "unless the context requires otherwise" to support his argument that the HPCRA was designed to cover independent contractors. However, plaintiff points to no legislative history or other authority supporting this proposition. Reading the statute, it is apparent that the legislature's decision to redefine the term "employer" in the HPCRA was to specify the size of employer addressed by the HPCRA. Plaintiff's argument that plaintiff need not be an employee to bring a claim under the HPCRA is without merit.
 
 2. Plaintiff is not an Employee
 
 25
 Plaintiff argues that, even if he must be an employee of defendants to state a claim under the HPCRA, the trial judge erred in finding that he was an independent contractor. Whether a worker is an employee or an independent contractor is a question of law, if the facts are not in dispute. Lamy v. Jack Jarvis & Co., 281 Or. 307, 312, 574 P.2d 1107 (1978); Wells v. Carlson, 78 Or.App. 536, 717 P.2d 640, 642 (1986).
 
 
 26
 In Oregon, the primary common law test for ascertaining whether an individual is an employee or an independent contractor is "the employer's right to exercise control over the manner and means of accomplishing the result." Nichols v. Baggarley, 79 Or.App. 505, 719 P.2d 914, 915 (1986). We are guided in our analysis of defendants' right to exercise control by the "right to control" test traditionally applied in workers' compensation cases. See Woody v. Waibel, 276 Or. 189, 554 P.2d 492 (1976); Premsingh & Assoc., Inc. v. National Council on Compensation Ins., 111 Or.App. 624, 826 P.2d 120 (1992).
 
 
 27
 The principal factors in the "right to control" test are: (1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. McQuiggin v. Burr, 119 Or.App. 202, 850 P.2d 385, 388 (Or.App.1993). We can also look to the terms of the contract between plaintiff and defendants. Although the terms are not controlling, they are not to be disregarded, and they carry significant weight. Id. The contract plaintiff signed with Farmers explicitly states that plaintiff is an independent contractor.
 
 
 28
 We then examine the first factor in the "right to control" test. While defendants set some limitations on plaintiff by requiring him to sell defendant's insurance on a preferred basis, agree to agency review and supervision, and agree to work evenings and every other Sunday, defendants' overall control over plaintiff is limited. Plaintiff finds his own customers, decides which contracts to offer and makes his own appointments. He sets his own office hours; schedules his vacations; and arranges for coverage of his office. He employs other employees and makes all decisions as to hiring, rate of pay and length of service. He undertakes various promotional activities on his own, including telemarketing, advertising, sending out announcements of his new office location and purchase of business cards. The exercise of some limited control by the employer over the work being done will not necessarily make the worker an employee rather than an independent contractor. Jenkins v. AAA Heating and Cooling, Inc., 245 Or. 382, 421 P.2d 971, 973 (1966). See also Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377 (7th Cir.1991); Jenkins v. Travelers Ins. Co., 436 F.Supp. 950 (D.Or.1977).
 
 
 29
 The second factor is the method of payment. The fact that plaintiff's earnings do not depend on the number of hours he works but upon his efforts and skill in placing business and writing insurance shows that defendants' interests were in the results that he achieved, not in how he achieved them. See Carlile v. Greeninger, 35 Or.App. 51, 580 P.2d 588. Further, plaintiff filed 1099 tax forms for self-employed persons. Defendants did not withhold social security or other taxes, and there is no evidence that defendants provided annual leave, sick leave or disability leave for plaintiff. These facts all support the conclusion that plaintiff is an independent contractor.
 
 
 30
 The third factor is the furnishing of equipment. Id. Plaintiff personally purchased all of his office furniture and equipment and purchased a vehicle which he uses solely in connection with his insurance business. Plaintiff pays for all of his business licenses and insurance licenses; he selected his office location, negotiated his lease, and made decisions regarding relocation of his office. These facts weigh against the conclusion that plaintiff is an employee. McQuiggin, 850 P.2d at 388.
 
 
 31
 In regard to the final factor, the "right to fire," the Agreement provides that either party could terminate the contract after giving 30 days notice. This provision alone can be indicative of an independent contractor relationship. Id.; In re Compensation of Henn, 60 Or.App. 587, 654 P.2d 1129 (1982), rev. den., 294 Or. 536, 660 P.2d 682 (1983).
 
 
 32
 Applying the four factors of the "right to control" test, and considering the terms of the Agreement, we conclude that plaintiff is an independent contractor. The trial judge correctly found that plaintiff was not an "employee" for purposes of showing handicap discrimination. Since we affirm the grant of summary judgment on this basis, we do not reach the first ground on which the trial judge granted summary judgment.
 
 II. Plaintiff's Defamation Claims
 
 33
 Plaintiff appeals the district court's grant of summary judgment on his defamation claims involving defendants' statements to a bonding company, and to other agents who worked for defendants. The district court held that the information was either true, or was not published to third parties.
 
 
 34
 1. Defendants' Statements to Bonding Company
 
 
 35
 Plaintiff alleged that he was slandered by defendants when they sent a First Notice of Suspected Fraud to their bonding company, Royal Insurance. The language in the notice to which plaintiff objects states that plaintiff allegedly "... forged endorsement of FNWL annuity surrender check. He laundered the check through his trust account and redeposited the funds to generate additional commissions of $1,037.76." The trial judge found no defamation, since he found that the statements were true, and an essential element of a claim for defamation is the "falsity" of the statement. Fowler v. Donnelly, 225 Or. 287, 358 P.2d 485 (1960). The truth or substantial truth of statements can be established as a matter of law if there is no genuine issue of material fact precluding such a ruling. Hickey v. Settlemier, 116 Or.App. 436, 841 P.2d 675 (Or.App.1992).
 
 
 36
 While plaintiff argues that a jury should have been allowed to determine whether plaintiff in fact acted with "fraudulent intent," plaintiff's sole authority is inapposite to this case. Plaintiff relies on Willetts v. Scudder, 72 Or. 535, 144 Pac. 87 (1914), where the Oregon Supreme Court held that it was the province of the jury to determine whether the plaintiff, who was accused by defendant of having endorsed and deposited into his personal account a check payable to the defendants' company, acted "with intent to defraud."
 
 
 37
 However, in Willetts, defendants had agreed to the manner in which plaintiff handled the check, and only later accused defendant of forgery; further, the plaintiff did not sign another person's name to the check, but endorsed it in his own name as defendant's agent. Thus, in Willetts there were issues of material fact which left open the question of whether the accusation of fraud was true, unlike in this case. We affirm the trial judge's granting summary judgment on plaintiff's defamation claim involving statements to the bonding company, on the basis that the statements were true.
 
 2. Defendants' Statements to Other Agents
 
 38
 Plaintiff also alleged that he was slandered by defendants when various statements were made to other agents working for Farmers. The trial judge found that any statements to other agents were intracorporate communications, and not "published" to third persons, and therefore, could not constitute slander or libel as a matter of law. See Rice v. Comtek Mfg. of Oregon, Inc., 766 F.Supp. 1550 (D.Or.1990). We do not reach the issue whether intracorporate communications constitute publication, but affirm on other grounds. We may affirm on any ground supported by the record. In re Apple Computer Sec. Litigation, 886 F.2d 1109, 1112 (9th Cir.1989).
 
 
 39
 Plaintiff's complaint did not set out the actual words plaintiff alleges were published to other agents, subjecting his allegations of defamation to dismissal. Rice v. Comtek Mfg. of Oregon, Inc., 766 F.Supp. 1539 (D.Or.1990) (allegation of defamation dismissed under Oregon law for failure to state actual words published). Even if we were to reach the merits of plaintiff's claim, an examination of the statements that plaintiff testified defendants made to other agents shows that only one statement is sufficiently specific to be considered potentially defamatory--and that statement is protected by a qualified privilege. The bulk of statements plaintiff describes as defamatory are vague assertions, such as that plaintiff "believed that something was said or inferred" to other agents that "changed the tone of their relationship". The sole statement that could possibly be considered defamatory was written by Steve Andersen, Farmer's regional agency manager, on a memo to Rick Fletcher, concerning an auto policy which was transferred to plaintiff's agency from another agent. The memo states: "Can you trace the transaction so we can find out how and why this transpired? Knowing Dutson, we could have some suspicious transactions."
 
 
 40
 This statement is protected by a qualified privilege. A statement is conditionally privileged if it was made to protect the interests of the maker or the recipient, or if it was on a subject of mutual concern to the maker and the recipient. Wattenburg v. United Medical Lab., 269 Or. 377, 525 P.2d 113 (1974). Steve Andersen of the regional office was well aware that plaintiff had engaged in a suspicious transaction with his father's FPA. The statement was made to protect Farmer's interests, to ensure that another suspicious transaction was not taking place. Further, the statement concerned a subject of concern to the regional office.
 
 
 41
 A conditional privilege can be lost if it is abused because of the publisher's lack of belief or reasonable grounds for belief in the truth of the defamatory matter. Schafroth v. Baker, 276 Or. 39, 45, 553 P.2d 1046 (1976). There is no indication that the regional office should not have believed that plaintiff would likely be engaged in a suspicious transaction, given the facts of this case. We affirm the trial judge's granting defendants' motion for summary judgment on plaintiff's defamation claim involving statements made to other agents.
 
 
 42
 III. Jury Instruction on Reckless Infliction of Emotional Distress
 
 
 43
 Plaintiff contends that the trial court abused its discretion by refusing to instruct the jury on the tort of reckless infliction of emotional distress, and only instructing the jury on the intentional infliction of emotional distress. Under Oregon law, liability for infliction of severe emotional distress can arise in three situations: (1) where the defendant intended to inflict severe emotional distress; (2) where the defendant intended to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself; and (3) for negligent infliction of emotional distress. Hammond v. Central Lane Communications Center, 312 Or. 17, 22-23, 816 P.2d 593, 596 (Or.1991).
 
 
 44
 Under the second situation described above--reckless infliction of severe emotional distress--a plaintiff can recover "by showing recklessness or a reduced level of intent, i.e., 'the intent to do the painful act with knowledge that it will cause grave distress ...' " Hammond, 816 P.2d at 598 (quoting Hall v. The May Dept. Stores Co., 292 Or. 131, 135, 637 P.2d 126 (1981).
 
 
 45
 The jury instruction requested by plaintiff states: "the defendants knew that their conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result." There is no authority supporting this formulation of recklessness for the reckless infliction of emotional distress. The appropriate formulation of recklessness is the standard stated in Hall and Hammond.
 
 
 46
 As described in another, uncontested, instruction given to the jury, plaintiff's claim for the infliction of severe emotional distress alleged: "commencing in the spring of 1990 and continuing to the present time the defendant, without justification, intentionally subjected him to severe emotional distress resulting in damage to his emotional and physical health and well being." Thus, the "painful act" on which plaintiff based his reckless infliction of emotional distress claim was that plaintiff was "intentionally subjected to severe emotional distress." As a result, if the trial judge had read the jury a separate instruction on the reckless infliction of emotional distress, the jury would have heard the following two instructions on severe emotional distress: (1) plaintiff must prove that "defendant intended to inflict severe emotional distress with knowledge that it will cause grave distress"; and (2) plaintiff must prove that "defendant intended to inflict severe emotional distress." These instructions are clearly not only confusing, but also redundant.
 
 
 47
 The trial judge's instruction to the jury that they could award damages for severe emotional distress only if they found that defendant "intended to inflict severe emotional distress" fairly and adequately covers the issues presented, correctly states the law, and is not misleading. Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992). We affirm the trial judge's decision not to use plaintiff's proposed jury instruction on the reckless infliction of severe emotional distress.
 
 
 48
 IV. Jury Instruction on the Taxation of Annuities
 
 
 49
 Plaintiff contends that the trial judge erroneously instructed the jury on the taxation of annuity contracts following plaintiff's closing arguments, when the instruction was neither requested nor was part of the proposed instructions provided to counsel prior to closing arguments. However, the trial judge's procedure was entirely consistent with Fed.R.Civ.P. 51, which preserves a trial court's discretion to modify a final charge up to the time of its actual delivery to the jury. Estate of Lutren v. Chesapeake & O. Railroad, 592 F.2d 941, 945 (6th Cir.1979). Such discretion is needed because, "as experience teaches, closing arguments occasionally raise matters which affect the content of the proposed instructions." Id. As is clear from the record, the trial judge believed that plaintiff's counsel misrepresented to the jury that annuity contracts are not taxed. The trial judge did not abuse his discretion in informing the jury otherwise.
 
 
 50
 V. Witness Testimony on Taxation of Annuities
 
 
 51
 Plaintiff argues that the court abused his discretion in allowing Steven Andersen, Farmers' regional agency manager, to testify about the insurance code and the effect of tax law on Zenos Dutson's FPA. Plaintiff contends that Andersen was erroneously allowed to testify as an "expert" on taxation when Andersen lacked qualifications to so testify. However, an examination of the record shows that the trial judge admitted Andersen not as an expert witness, but as a transaction witness, so that he could testify as to matters in which he personally participated.
 
 
 52
 Plaintiff also argues that, by allowing the testimony, the court abdicated its role in instructing the jury on law. Plaintiff provides no authority for this argument, which is meritless. The trial judge did not abdicate his role but allowed Andersen to testify as to tax and insurance law to enable the jury to better understand Andersen's factual testimony about the FPA.
 
 
 53
 Lastly, plaintiff contends that admitting the testimony was "unfair," since the testimony could lead the jury to conclude that plaintiff was a "liar." This objection of plaintiff is utterly without merit. The trial judge did not abuse his discretion in allowing Andersen to testify.
 
 CONCLUSION
 
 54
 Plaintiff's arguments lack merit. We affirm.
 
 
 55
 AFFIRMED.
 
 
 
 *
 Honorable Thelton E. Henderson, Chief District Judge, for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3