Argued and submitted May 17, 1991, reversed and remanded January 8, D'Angelo's petition for reconsideration and Schultz's petition for reconsideration denied March 18, both petitions for review denied April 28, 1992 (313 Or 209)

Judy D'ANGELO
and Alice L. "Bunny" Owen,
*Appellants,*

*v.*

Louis F. SCHULTZ, Jr.,
Personal Representative of the Estate of
Juliette Lackey, deceased,
*Respondent,*

*and*

Leorene N. JAVORIC,
*Defendant.*

(86-CV-70; CA A66327)

823 P2d 997

Mark McCulloch, Portland, argued the cause for appellants. With him on the briefs was Powers, McCulloch & Bennett, Portland.

Robert E. Bluth, Medford, argued the cause for respondent. With him on the brief were William V. Deatherage and Frohnmayer, Deatherage, Pratt, Jamieson & Turner, P.C., Medford.

Before Joseph, Chief Judge, and Richardson* and Deits, Judges.

JOSEPH, C. J.

---

* Richardson, J., *vice* Newman, J., deceased.

**JOSEPH, C. J.**

Plaintiffs appeal from a judgment on a directed verdict on their claim for breach of a contract to purchase an apartment building. This case is before us for the second time. The first time, we dismissed the appeal as to defendant Javoric, affirmed the trial court's dismissal of plaintiffs' claims for fraudulent and reckless misrepresentations, reversed the summary judgment dismissing plaintiffs' contract claim and remanded for further proceedings. *D'Angelo v. Schultz*, 89 Or App 339, 749 P2d 584, *aff'd* 306 Or 504, 760 P2d 866 (1988). Plaintiffs now assign error, after a retrial, to the trial court's denial of their motion for directed verdict and its allowance of defendant Schultz's motion for directed verdict.

Schultz, an attorney acting as the personal representative of an estate, solicited bids on the property by auction through a real estate agent, Morrison. Plaintiffs participated in the auction, but Javoric's offer was accepted. On May 11, 1985, Javoric executed an earnest money agreement that fixed June 1 as the approximate date for the closing, but noted: "Buyer may need until 7-1-85 to complete transaction." After June 1, the deadline was extended to July 15.

Late in June, Javoric expressed a desire to withdraw from the deal. On July 2, Morrison called plaintiff D'Angelo to ask whether plaintiffs wanted to purchase the property on the same terms as Javoric had offered. Plaintiffs said they would buy the property on those terms. Morrison then prepared an earnest money agreement for them to sign. They met with Morrison in his office on July 4. D'Angelo testified that Morrison spoke on the phone with Schultz and Javoric while plaintiffs were present. Plaintiffs signed the earnest money agreement before they left.

The record discloses conflicting testimony about what Morrison said during the telephone conversations with Schultz and Javoric and what he said to plaintiffs afterward. Plaintiffs testified that they understood that Javoric had agreed to relinquish her right to purchase and that Schultz had verbally accepted plaintiffs' offer.[1] They testified that,

---

[1] We do not understand why the parties concluded that plaintiffs made an offer by agreeing to a purchase on terms proposed by Schultz. Because plaintiffs do not contend that they accepted Schultz's offer, we do not address the issues in that light.

while Morrison was on the phone, he asked Schultz whether to "sign them up" and that Morrison indicated that Schultz had answered in the affirmative. Plaintiffs also testified that Morrison indicated that he was going to take the earnest money agreement to Schultz and that Schultz was going to sign it. Morrison testified that he told plaintiffs that Schultz could not accept plaintiffs' offer until Javoric had signed a written relinquishment of her rights.

. After the July 4 meeting, Schultz dictated to Morrison an agreement for Javoric to sign. That document provided that she would relinquish her right to buy the property in exchange for a promise that Schultz would refund $8,000 of the $10,000 on deposit if plaintiffs had completed their purchase by July 20. Schultz testified that he believed that he would be free to accept plaintiffs' offer when Javoric signed the written relinquishment. Javoric signed it on July 9. Schultz signed plaintiffs' earnest money agreement on July 7 or July 9.[2]

On July 10, Morrison contacted D'Angelo and informed her that Javoric had obtained financing and would be following through with the purchase. Schultz then called D'Angelo and said that he was going to give Javoric until July 15 to complete the purchase. D'Angelo testified that she responded, "[N]o way, she's relinquished her right to the property." Plaintiffs went to Morrison's office later that day and were shown Javoric's relinquishment document. The next day, plaintiffs went to Schultz's office and obtained a copy of their earnest money agreement, which Schultz had signed under the typewritten date "July 5."

Plaintiffs argue that Schultz accepted their offer no later than July 9, when he signed their earnest money agreement. At that time, they claim, no conditions precedent had been attached to Schultz's acceptance. Alternatively, they argue that his acceptance was without qualification, because no conditions precedent were reduced to writing. They assert that Schultz bore the risk that plaintiffs would discover that

---

[2] Schultz testified that he signed the agreement on July 9. His secretary testified that he signed it and gave it to her on July 7. However, she also said that, on the same day, he dictated a transmittal memorandum to accompany the document; the memorandum is dated July 9.

he had signed the document and would understand his acceptance to be unconditional. Schultz argues that he did not intend to accept at any time, as evidenced by his failure to sign a transmittal memorandum drafted to accompany a copy of the document that would be delivered to plaintiffs. He argues, in the alternative, that the earliest that he accepted plaintiff's offer was July 11, when they obtained a copy of the agreement from his secretary, and that, by that time, plaintiffs were aware that he intended any acceptance to be contingent on Javoric's failure to complete the sale by July 15.

The trial court granted the motion for directed verdict, reasoning that no material issues of fact were in dispute and that defendants were entitled to judgment as a matter of law, because, "before ever receiving the copy of the Earnest Money[,] plaintiffs knew that their offer had not been accepted and would not be accepted until either Mrs. Javoric withdrew or the 15th of July rolled around without her going ahead with the deal."

The contract issues in this appeal are generally the same as those that were before us in the first appeal. In affirming our decision, the Supreme Court said:

"Whether other legal requirements regarding the formation of contracts have been fulfilled and whether the statute of frauds has been satisfied are two separate issues. They should not be merged by requiring delivery of a writing that is not necessarily an offer, an acceptance *or the contract*, but may be *merely a memorandum*. The statute requires only that a sufficient writing signed by the party to be charged be produced. Such a writing has been produced and the requirements of the statute therefore have been satisfied." 306 Or at 506. (Emphasis supplied.)

This time, the trial court erred in finding that, because plaintiffs first received a copy of the written earnest money agreement on July 11, the only possible date that a contract could have been formed was, as a matter of law, July 11.

The parties and the trial court apparently misunderstood the Supreme Court's explanation of the relationship between the Statute of Frauds and the formation of a contract. The absence of a writing is a defense to *enforcement* of a contract; it is not a challenge to the *existence* of a contract. The statute does not establish any elements requisite to

*making* a contract.[3] Generally, neither the offer nor the acceptance need be in writing in order to make a contract — even one for the sale of real property. A writing need not be delivered in order to make a contract, if the acts for making a contract have been performed. Unless a different requirement is prescribed in the offer, one *may* accept an offer merely by signifying assent by signing a document, but the Statute of Frauds does *not* require that acceptance be done in that way. *See Wagner v. Rainier Mfg. Co.*, 230 Or 531, 539, 371 P2d 74 (1962). The date that the contract could have been made may be earlier than the date that the statute was satisfied. A jury could find that the parties made a contract on July 4, 5, 7 or 9, if it found that everything required to establish the elements of a contract had occurred by the date.

■ The parties and the trial judge apparently also misunderstood what they variously refer to as "condition precedent to acceptance," "conditional acceptance" and "contingent acceptance." Assuming that the other elements of a contract are present, a condition precedent is not a condition on which the validity of an *acceptance* is contingent; it is a condition on which *performance* is contingent. *Gardner v. Meiling*, 280 Or 665, 673, 572 P2d 1012 (1977). If a purported condition is raised by the offeree in response to an offer, then the addition of the condition makes the response a counteroffer, *not* a conditional acceptance. *Small v. Paulson*, 187 Or 76, 85, 209 P2d 779 (1949).

■ Plaintiffs argue that both the Statute of Frauds and the Parol Evidence Rule preclude Schultz from claiming that their contract contains a condition precedent, because the written instrument does not include the condition. They are mistaken. The statute does not preclude the enforcement of an unwritten contract, unless the terms in the contract are

---

[3] ORS 41.580 provides, in relevant part:

"(1) In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *

"(e) An agreement * * * for the sale of real property * * *."

required by the statute to be in writing. The condition precedent that Schultz claims is not such a term. Therefore, its absence from the written instrument does not, by itself, preclude enforcement of the condition.

■■■ The existence of a condition precedent is a question of fact. *Land Reclamation v. Riverside Corp.*, 261 Or 180, 183, 492 P2d 263 (1972); *see also Hatley v. Stafford*, 284 Or 523, 533 n 2, 588 P2d 603 (1978). Parol evidence is admissible to show that the parties to a contract agreed to a condition precedent, unless the court finds that they intended the writing to contain their entire agreement. *Hatley v. Stafford, supra*, 284 Or at 526. Plaintiffs have not argued that facts in the record prove that they and Schultz regarded the instrument as a fully integrated statement of their agreement.

■■ ■■ When we review denial of a motion for directed verdict, we view the evidence in the light most favorable to the nonmoving party and can reverse only if the record contains no evidence from which a jury could have found the necessary facts in that party's favor. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). The record contains conflicting evidence about when and whether Schultz, through his agent or otherwise, manifested an intent to accept plaintiffs' offer. It also contains conflicting evidence as to whether the parties' agreement, if any, involved a true condition precedent, and it contains conflicting evidence as to whether that condition, if it existed, made performance contingent on Javoric's formal relinquishment of rights or on her failure to close by July 15. A jury could have found facts in defendant's favor on any of those issues. Therefore, the trial court correctly denied plaintiffs' motion for directed verdict.

In an appeal from a judgment on a directed verdict, we also view the evidence in the light most favorable to the nonmoving party. *Paulson v. Western Life Insurance Co.*, 292 Or 38, 40 n 1, 636 P2d 935 (1981); *Rough & Ready Lumber v. Blue Sky Forest Products*, 105 Or App 227, 229, 804 P2d 498 (1991). The judgment will be upheld only if the record contains no evidence to support the position of the nonmoving party or if the evidence can support only one conclusion and that conclusion supports the moving party's position. *Hill v. Mayers*, 104 Or App 629, 632, 802 P2d 694, *rev den* 311 Or 187 (1990). The jury could reasonably have found facts in

favor of plaintiffs on any of the issues just discussed. Therefore, the trial court erred in granting defendant's motion for a directed verdict.

Plaintiffs also assign error to the court's award of attorney fees to defendants on the basis of a provision in the earnest money agreement. Given our disposition of the case, we need not address that issue.

Reversed and remanded.