Argued and submitted January 22, reversed and remanded April 14, 1993

# Kathleen C. McQUIGGIN,
## *Appellant,*
### *v.*
# Julie G. BURR
## and Washington County,
## *Respondents.*

## (A8805-02846; CA A61122)

850 P2d 385

Bradley C. Berry, Newberg, argued the cause for appellant. With him on the brief were Donald O. Tarlow and Brown, Tarlow & Berry, P.C., Newberg.

Lisa E. Lear, Portland, argued the cause for respondents. With her on the brief were Douglas R. Andres and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

■    Plaintiff appeals the trial court's judgment for defendant, dismissing plaintiff's tort action after a bifurcated trial, on the ground that defendants are immune from liability because plaintiff's claim was covered under workers' compensation law. *See* ORS 30.265(3)(a).[1] We reverse, because plaintiff is an independent contractor, not an employee.

On review, we are bound by the trial court's findings if they are supported by any evidence in the record. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). Based on those facts, we review to determine if the trial court erred as a matter of law in reaching its conclusion.

Plaintiff began her relationship with Milwaukie Floral in January of 1985. Her job was to care for plants at businesses that contracted with Milwaukie Floral for such services. In May, 1986, she was injured when her car was hit from the rear by defendant Burr, an employee of defendant Washington County. At the time of the accident, she was en route to the next location designated by Milwaukie Floral.

The trial court found:

"[T]he written contracts require the plaintiff to 'service and maintain plants' and that the 'satisfactory performance' of this task will be established by a task log that provides store identification, date, job performed and endorsement. It is obvious that the plaintiff and [her supervisor] saw their working relationship as result-oriented. Milwaukie Floral was only concerned about the presentability of the plants. However, the presentability of the plants could only be maintained by the services performed by the plaintiff. This was a service-oriented business by its nature and required labor in order to accomplish the end product marketed by Milwaukie Floral."

---

[1] ORS 30.265(3)(a) provides:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement * * *, are immune from liability for:

"(a) Any claim for injury to or death of any person covered by the workers' compensation law."

The trial court outlined the agreement between plaintiff and Milwaukie Floral:

"The contracts establish that Milwaukie Floral's payments to the plaintiff were predicated upon the plaintiff's servicing and maintaining plants at the various described locations on a twice-monthly basis of no less than 12 days apart, during described hours and maintaining a task log of her activities.

"* * * * *

"The contract provided compensation at the rate of $15.00 per location. At the time of the accident, payment was definitely by the piece. Ultimately, the compensation formula was changed and a portion of the monies paid was characterized as mileage reimbursement for tax and accounting purposes.

"* * * * *

"[T]he contract sets forth that either party may terminate the agreement with thirty-days' notice. They essentially renewed their relationship on a monthly basis. [Plaintiff's supervisor] didn't feel he had a 'moral right' to terminate her as long as she was doing her job. He was not sure what his rights were under the contract."

The trial court described how the contract provisions were carried out:

"I find that the plaintiff could determine her own working hours and days. A contractual requirement that her visits were to be at least 12 days apart and during the time Milwaukie Floral customers were open does not defeat the fact that she had total control over when she worked.

"* * * * *

"The contract provides that Milwaukie Floral will supply garden supplies and equipment. [Plaintiff's supervisor] testified that he would have given her tools, but he is not sure he had done so. He does remember paying for some fertilizer but recognizes that she may have also purchased some on her own. The question here is primarily whether the plaintiff provided the major tools of the trade. Here, the major 'tool' was plaintiff's automobile which she used while performing her duties. She paid for the fuel, maintenance and insurance.

"* * * * *

"While Milwaukie Floral provided or made available some supplies, the plaintiff also purchased a large number of her

own supplies and equipment. * * * While a good number of the supplies were inexpensive, they were nevertheless furnished by the plaintiff who also provided her car which was the tool most indispensable to the performance of the job."

Furthermore, the trial court found that the management style of Milwaukie Floral was virtually "non-existent," that Milwaukie Floral seldom interfered with plaintiff's performance, and that "the only thing Milwaukie Floral cared about was whether or not the plants were maintained in a presentable condition. Plaintiff had the discretion to choose the method of maintenance." Plaintiff's supervisor testified that "he did not care who went to the job site locations." Occasionally, plaintiff had friends assist her, and her supervisor did not object. The trial court found that plaintiff's supervisor provided

"some *initial* instruction and direction concerning plant maintenance; [however,] it is clear that he discontinued the requirement of her to complete the task logs and, at best, consulted with her concerning plant care versus supervising her in the skills of the trade. It is clear that day-to-day decisions concerning the timing and manner of care, along with routes selected, were left solely to plaintiff's discretion. Milwaukie Floral was only concerned with whether the plants remained in a presentable condition. [Plaintiff's supervisor] did not feel he could require the plaintiff to deliver * * * gifts during the holiday season and he was unsure whether he could make the plaintiff take on new customers."

There is evidence to support the trial court's findings. The inquiry is whether, on those facts, plaintiff is an independent contractor or an employee of Milwaukie Floral.[2] An employee is covered by the Workers' Compensation Act if she is "subject to the direction and control of an employer." ORS 656.005(27).[3] An employer under ORS chapter 656 is one who has "the right to direct and control the services of any person." ORS 656.005(13). To test whether Milwaukie

---

[2] The 1989 amendments to the statutes relating to independent contractors are not applicable to this case. Or Laws 1989, ch 762, § 1; *former* ORS 701.025 (renumbered ORS 670.600 in 1991).

[3] ORS 656.005(27) has since been renumbered subsection (28). Or Laws 1990, ch 2, § 3.

Floral had the right to control plaintiff, we apply the traditional "right to control" analysis and also consider the "nature of the work." *Woody v. Waibel*, 276 Or 189, 196, 554 P2d 492 (1976).

■      The principal factors in the "right to control" test are: (1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 769 P2d 215 (1989).

■      Although the contract listed the locations where plaintiff was to perform her services, plaintiff had flexibility in scheduling when she worked. Under her contract, she was required to go to each location two times a month and to make the visits at least 12 days apart. Those circumstances are not indicative of "employee" status. *See Jenkins v. AAA Heating & Cooling Inc.*, 245 Or 382, 386, 421 P2d 971 (1966). Also, the parties expressly refer to plaintiff in the contract as an independent contractor. Although that fact is not controlling, it is not to be disregarded, and "in a close case, it may swing the balance." *Henn v. SAIF*, 60 Or App 587, 592, 654 P2d 1129 (1982), *rev den* 294 Or 536 (1983).

Similarly, although the fact that plaintiff was paid by the visit is not conclusive evidence of her status, it does suggest that Milwaukie Floral's interest was in the results that she achieved. *See Carlile v. Greeninger*, 35 Or App 51, 54, 580 P2d 588, *rev den* 283 Or 235 (1978). Likewise, the facts that plaintiff furnished the major "tool" of the business, her car, and was not reimbursed for her transportation expenses, weigh against the conclusion that she was an employee. In regard to the "right to fire" factor, the contract provides that *either* party could terminate the contract after giving 30 days notice. That provision also could be indicative of an independent contractor relationship. *Henn v. SAIF, supra*, 60 Or App at 593.

Moreover, certain evidence about the nature of plaintiff's work and Milwaukie Floral's business suggests that she was an independent contractor. Plaintiff worked part time and decided when she would visit each store. The day-to-day decisions were left to her discretion. Her work did not require her to contact her supervisor on a regular basis, nor did her

supervisor routinely check her work. She furnished some of her own supplies for her work. Plant maintenance was not, as far as the record shows, an integral part of Milwaukie Floral's business.

Based on all the evidence, we conclude that, under the "right to control" and the "nature of the work" tests, plaintiff was an independent contractor. Therefore, the trial court erred in holding that defendants were immune from liability under ORS 30.265(3)(a).

Reversed and remanded.