Argued and submitted June 10, reversed and remanded October 26, 1994

Randi BUCKEL,
*Appellant,*

*v.*

Ron NUNN,
dba Town & Country Market
and Dennis Nunn,
*Respondents,*

*and*

Steven RODRIGUES
and Richard Rowe,
*Defendants.*

(91-CV-0348; CA A81299)

883 P2d 878

Mark Lansing argued the cause and filed the briefs for appellant.

Nathan B. McClintock argued the cause for respondents. With him on the brief was Orrin R. Ormsbee.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

██ Plaintiff appeals from a judgment for defendants Ron and Dennis Nunn (defendants). She alleged that defendants are vicariously liable for the acts of Steven Rodrigues, doing business as S&S Security and Loss Prevention (S&S Security), and his employee, Richard Rowe, that she claims constituted false imprisonment and intentional infliction of emotional distress.[1] She assigns error to the grant of defendants' motion for a directed verdict. The trial court ruled that, as a matter of law, plaintiff's vicarious liability claims fail, because Rodrigues and Rowe were independent contractors and not defendants' employees. We review the record in the light most favorable to plaintiff, the party opposing the motion. The judgment will be upheld only if the record contains no evidence to support her position or if the evidence can support only one conclusion. *D'Angelo v. Schultz*, 110 Or App 445, 451, 823 P2d 997, *rev den* 313 Or 209 (1992). We reverse and remand.

Ron Nunn is the owner of the Town & Country Market, where plaintiff was employed as a part-time grocery clerk. Dennis Nunn is the store's manager. Ron authorized Dennis to hire a security firm to investigate alleged employee thefts at the market. On November 7, 1989, Dennis signed a form contract prepared by S&S Security under which S&S Security was to perform various security functions. Rodrigues and Rowe subsequently began to investigate employee theft at the market.

At approximately 5:30 p.m. on the evening of December 20, 1989, Rowe confronted plaintiff in the parking lot as she left the market following her regular shift. Rowe allegedly displayed a badge to plaintiff and requested that she return to the market with him. Dennis Nunn was standing nearby at the time. Plaintiff looked toward him, and he shrugged his shoulders in response. Plaintiff interpreted the shrug to mean, "Too bad, but I am your boss, and you have no choice but to follow this man." Rowe then led plaintiff back into the store and, after allowing her to make a telephone call, took her to a room in the back of the market and interrogated her

---

[1] Plaintiff obtained a jury verdict against Rowe and Rodrigues, who are not parties to this appeal.

for approximately three hours. Rowe allegedly told plaintiff that he would decide whether she would go home or go to jail that evening. He repeatedly accused plaintiff of stealing from the market, but did not offer any evidence to corroborate his accusations. Plaintiff was visibly upset throughout the interrogation. Although initially claiming innocence, plaintiff eventually confessed to taking merchandise, lottery tickets and cash from the market. Rodrigues, who was present for about 20 minutes of the interrogation, was present when plaintiff confessed.

Dennis remained in the market and near the room in which the interrogation occurred. During that time, Dennis received as many as four telephone calls from plaintiff's husband and mother-in-law inquiring about plaintiff. Rowe frequently left the room to confer with Dennis about items that were allegedly missing and to request that Dennis total up the cost of the merchandise that plaintiff had admitted stealing. Following each conference with Dennis, Rowe returned to the room and informed plaintiff that there was more that she was not telling him. At the end of the interrogation, Rowe convinced plaintiff to sign a promissory note for $9,000.

Plaintiff refused to make any payments on the promissory note. Rodrigues referred the matter to the local district attorney, who prosecuted plaintiff for theft in the second degree. In November, 1991, a jury acquitted plaintiff. Plaintiff then filed this action against Rowe, Rodrigues and defendants, alleging false imprisonment and intentional and reckless infliction of emotional distress.

Defendants moved for a directed verdict at the close of evidence, on the ground that defendants were not vicariously liable as a matter of law because Rodrigues and Rowe were independent contractors. The trial court granted the motion.

Plaintiff assigns error to the trial court's grant of defendants' motion for directed verdict. She argues that there is room for dispute about whether Rodriguez and Rowe were employees of the defendants or were independent contractors, and that the question of vicarious liability therefore should have been submitted to the jury. Defendants contend

that plaintiff presented no evidence during trial that defendants retained the right to control or had actual control over the way Rodriguez and Rowe conducted their investigation. Therefore, they maintain, the trial court properly refused to submit the claims to the jury.

█ The general rule in Oregon is that one who hires an independent contractor is not vicariously liable for the torts of that independent contractor. *Soderback v. Townsend*, 57 Or App 366, 368 n 2, 644 P2d 640, *rev den* 293 Or 394 (1982). The question is whether Rodrigues and Rowe were defendants' employees, for whose tortious conduct they can be held vicariously liable on the basis of *respondeat superior*, or whether they were independent contractors.

█ In *Soderback*, we held that an independent contractor is one who " 'contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to * * * the result of the work * * *.' " 57 Or App at 369, *quoting Oregon Fisheries Co. v. Elmore Packing Co.*, 69 Or 340, 345, 138 P 862 (1914). In determining whether a person is an independent contractor, "[t]he *right* to exercise control is decisive." *Soderback v. Townsend, supra*, 57 Or App at 369. (Emphasis in original.) Whether the right to control exists "is determined by examining the employment arrangement." 57 Or App at 369. The principal factors in determining independent contractor status are (1) evidence of the right to or actual exercise of control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *McQuiggin v. Burr*, 119 Or App 202, 207, 850 P2d 385 (1993).

In examining the relationship between defendants and Rowe and Rodrigues, we look first to the contract. It provides:

> "This is to certify that permission has been granted to S&S Security and Loss Prevention and anyone working as an agent for S&S Security and Loss Prevention as deemed necessary to perform various security functions as needed within the above named store or company.

> "S&S Security and Loss Prevention assumes all responsibility for it's [*sic*] actions while working in the above named store or company.

"Service of this contract is to start on the above date and will include any specific duties listed below.

"Service is to continue until terminated by either party.

"S&S Security and Loss Prevention requires a thirty day written notice of cancellation from the above store representative."

Below Dennis' signature on behalf of the market, the agreement includes a line that reads: "Notes or Specific duties to be performed," and then lists:

"Surveillance of store employees
"Honesty shop program
"Apprehension and processing of store employees
"Criminal prosecution if necessary
"Civil process."

Finally, the agreement specifies that S&S Security is to provide services for a three-month period (November 7, 1989 until January 7, 1990), and is to receive compensation of $400 per month, plus 50 percent of any recovered property or moneys.

■       The contract is not helpful with respect to the four factors outlined in *McQuiggin*. It lists in only general terms the duties that S&S Security is to perform. It is silent about who has the right to control the manner and means of accomplishing those duties, or even when during the day the duties are to be performed. The agreement is similarly ambiguous regarding the method of payment. It provides both that payment is to be by time ($400 per month), which suggests an employment relationship, and by the job (50 percent of the value of recovered property), which suggests that S&S is an independent contractor. *Henn v. SAIF*, 60 Or App 587, 592, 654 P2d 1129 (1982), *rev den* 294 Or 536 (1983). Neither is the contract helpful regarding the third factor in *McQuiggin*; namely, the furnishing of equipment. It does specify that S&S Security is to perform surveillance in defendants' market, but is silent about the furnishing of equipment, or whether S&S Security has unlimited or restricted access to the market. Finally, the contract is ambiguous regarding the right to fire. The contract gives either party the right to terminate services at will, which suggests an employment relationship, yet requires defendants to provide a 30-day written notice of

cancellation, which suggests that S&S is an independent contractor. *Henn v. SAIF, supra,* 60 Or App at 593.[2]

We cannot say as a matter of law that under the contract S&S Security was an independent contractor.

■     Where, as here, the language of the contract between the parties is not determinative of their relationship, we may look beyond that language to determine their actual relationship. *See Amfac Foods v. Int'l Systems,* 52 Or App 907, 912, 630 P2d 868 (1981), *rev'd on other grounds* 294 Or 94, 654 P2d 1092 (1982). That relationship may be revealed by the parties' actions.

■     Plaintiff contends that, as owners of the premises, defendants have a presumptive right to control the use of their premises and could have ended the interrogation at any time they wished. She argues that testimony given by Dennis at trial was evidence of their right to control the actions of Rodrigues and Rowe:

> "[Plaintiff's Counsel]:   But at some point, Mr. Nunn, when you know what they're going to do to people, don't you feel you have a duty to step forward and stop what they're doing?
>
> "[Dennis Nunn]:   I didn't sit in on their conversations. They were questioning the employees as to what happened, and like I said, this is what we hired them for. I saw nothing, nothing wrong with what I had seen that they did."

Plaintiff maintains that Nunn's statement represents an "implicit admission" that he had a right to interfere with the interrogation and, hence, to control Rodrigues and Rowe.

Plaintiff also contends that defendants provided Rodrigues and Rowe the "instrumentalities, tools and place of work," which is evidence of an employment relationship. She argues that Dennis permitted Rowe to escort plaintiff into the market after Rowe confronted her in the parking lot and provided a room in the back of the market in which

---

[2] Defendants' only argument regarding the contract is the provision on termination. They suggest that, despite the language of defendants' unrestricted right to terminate, the 30-day notice provision is conclusive evidence that the contract calls for an independent contractor relationship. We find no authority for that proposition.

Rodrigues and Rowe conducted the interrogation. During the interrogation, Rodrigues and Rowe used equipment furnished by the market, including an adding machine.

Finally, plaintiff contends that Dennis's participation in activities surrounding the interrogation amounted to supervision of Rodrigues and Rowe and, hence, a right to control their conduct of the interrogation. She notes that Dennis was present when Rowe first approached plaintiff and merely shrugged when Rowe asked her to return to the market. She also points to the fact that Dennis remained in the market throughout the interrogation and assisted Rodrigues and Rowe by totaling up the value of merchandise that plaintiff admitted stealing, and by screening telephone calls to plaintiff during the interrogation.

Defendants make essentially two arguments in response to plaintiff's characterization of the relationship between them and Rodrigues and Rowe. First, they contend that Dennis's involvement in the interrogation shows that Rodrigues and Rowe were controlling Dennis's actions by asking him for the prices of certain items and to add up sums of figures. Second, they contend that their ownership of the market in which a portion of the interrogation occurred should not be held to create a sufficient right of control to make their relationship with Rodrigues and Rowe one of employer-employee.

Defendants' argument that Dennis was under the control of Rodrigues and Rowe during the interrogation is not persuasive. Defendants cite no cases, and we find none, in which a court has held that, because the employer worked with, alongside or even under the direction of the person hired to do a piece of work, the hired person is an independent contractor. We assume, without deciding, that premises ownership alone does not create a sufficient right of control to defeat independent contractor status. Nonetheless, we cannot say following our review of the record that plaintiff presented no evidence to support her theory that Rodrigues and Rowe were employees rather than independent contractors, or that the evidence presented by the parties can support only one conclusion. Plaintiff submitted evidence from which the jury could reasonably find that Rodrigues and Rowe were

subject to defendants' control and therefore were not independent contractors. Accordingly, the trial court erred in granting defendants' motion for a directed verdict on plaintiff's claims against defendants based on vicarious liability for the acts of Rodrigues and Rowe.

We do not address plaintiff's second assignment of error.

Reversed and remanded.