Argued and submitted December 16, 1994, affirmed March 8, 1995

Randi BUCKEL,
*Respondent,*

*v.*

Ron NUNN,
dba Town & Country Market,
Dennis Nunn and Richard Rowe,
*Defendants,*

*and*

Steven RODRIGUES,
*Appellant.*

(91-CV-0348; CA A83213)

891 P2d 16

P. David Ingalls argued the cause and filed the opening brief for appellant. With him on the reply brief was Cowling, Heysell, Plouse, Ingalls & Moore.

Clayton Patrick argued the cause for respondent. On the brief were Mark Lansing, R. Daniel Simcoe and Sloan & Lansing.

Before Warren, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff brought claims against the owner and manager of Town & Country Market (the market) and against defendant Rodrigues[1] and his employee, Rowe, who provided security services to the market. She sought damages allegedly suffered when she was questioned by defendant and Rowe about employee thefts at the market. Defendant appeals from the judgment entered for plaintiff after a jury verdict. We affirm.

■ Defendant assigns error to the trial court's denial of his motions for directed verdicts on plaintiff's claims for intentional infliction of emotional distress, false imprisonment, and his defense of probable cause to the claim for false imprisonment under the merchant's statutory privilege to detain a suspected thief in a reasonable manner and for a reasonable time. ORS 131.655. He also assigns error to the trial court's refusal to remove the issue of punitive damages from the jury. We review the record in the light most favorable to plaintiff, the party opposing the motions.[2] We will reverse the judgment only if the record contains no evidence to support plaintiff's claims or if defendant was entitled, as a matter of law, to the defense of probable cause on the claim of false imprisonment. *Petty v. Rogue Federal Credit Union,* 106 Or App 538, 541, 809 P2d 121, *rev den* 311 Or 432 (1991).

Plaintiff was employed for approximately nine months as a part-time grocery clerk at the market. The Nunns hired S&S Security, owned by defendant, to investigate alleged employee thefts. The contract with S&S Security specified that defendant and Rowe were to provide surveillance of store employees, conduct "honesty shops"[3] and

---

[1] Ron and Dennis Nunn, owner and manager of the market, respectively, were granted a directed verdict and were the subject of an earlier appeal by plaintiff. *See Buckel v. Nunn,* 131 Or App 121, 883 P2d 878 (1994). Rowe settled with plaintiff after the jury verdict and was dismissed from the case. Rodrigues is the only defendant on appeal; therefore, when we refer to defendant, we mean only Rodrigues.

[2] Defendant's summary of the facts was generally presented in a light most favorable to him, contrary to the standard of review for denial of a motion for a directed verdict.

[3] The "honesty shops" consisted of defendant or one of his employees going into the market and purchasing a single item. Each would select an item with a price near $5, place a $5 bill on the counter and leave. The cash registers have two tapes, one of

apprehend and process store employees as appropriate. The contract also provided that S&S Security would be paid $400 per month and 50 percent of any recovered property or moneys.

On November 19, 20 and 26, 1989, defendant conducted "honesty shops" at the market and concluded that plaintiff was taking money. On December 20, defendant directed Rowe to question plaintiff about the thefts.

Shortly after 6:00 p.m. that evening, Rowe confronted plaintiff in the parking lot as she left the market after her regular shift. Rowe displayed a badge and requested that she return to the market with him. He led plaintiff back into the store and, after allowing her to make a telephone call, took her to a small storage room in the back of the market and asked her to sit on a crate. Rowe positioned himself between plaintiff and the swinging half-doors leading out of the room. Rowe told plaintiff several times that he would decide whether she would go home or go to jail that evening. He repeatedly accused her of stealing from the market, but did not offer any evidence to corroborate his accusations. Plaintiff was visibly upset throughout the interrogation, which lasted for about 3 hours. Plaintiff initially claimed innocence, but about 30 minutes into the interrogation, she confessed to taking merchandise, lottery tickets and cash from the market.

During the course of the interrogation, plaintiff's husband and mother-in-law made several telephone calls to the market, but plaintiff was allowed to receive only one call from her husband. Rowe frequently left the room to confer with Dennis Nunn about items that were allegedly missing and to request that Nunn total up the cost of the merchandise that plaintiff had admitted stealing. Following each conference with Nunn, Rowe returned to the room and informed plaintiff that there was more that she was not telling him.

At approximately 9:00 p.m., defendant joined Rowe in his interrogation of plaintiff. By that time, plaintiff had

---

which is internal. Defendant would subsequently inspect the internal cash register tapes to see if the clerk rang up the transaction. If defendant did not find a transaction properly recorded, he would conclude that the clerk was stealing. Plaintiff was working during one of these "honesty shops."

admitted to taking $4,000 in merchandise, lottery tickets and cash from the market. Plaintiff was visibly upset when defendant entered the back room. Initially, defendant appeared to be sympathetic to her, telling her that he knew what she was going through and that he wanted to help her. Defendant and Rowe then repeatedly asked plaintiff about items she may have taken. When she asked "if that was enough," they told her it was not, that they knew there was more. Approximately 20 minutes after defendant joined in the interrogation, plaintiff admitted to taking an additional $5,000 in merchandise, lottery tickets and cash. At the end of the interrogation, she agreed to sign a promissory note for $9,000.

Plaintiff refused to make any payments on the promissory note. She was subsequently prosecuted for second degree theft and acquitted. She then filed this action against defendant, Rowe and the Nunns.

Defendant moved for directed verdicts at the close of evidence, on the ground that plaintiff failed to present any evidence to support her claims. He also moved for a directed verdict on his defense of probable cause under ORS 131.655. The trial court denied the motions. The jury returned a verdict in favor of plaintiff and against defendant and Rowe. The verdict specified economic damages of $10,700 and noneconomic damages of $20,000 jointly, and punitive damages of $25,000 each against defendant and Rowe.[4]

◼    Defendant first assigns error to the trial court's denial of his motion for a directed verdict on plaintiff's claim for intentional infliction of emotional distress. To support that claim, plaintiff must show that defendant: (1) intended to inflict severe mental or emotional distress; (2) that defendant's acts, in fact, caused plaintiff severe mental or emotional distress; and (3) that defendant's acts consisted of some extraordinary transgression of the bounds of socially tolerable conduct or exceeded any reasonable limit of social toleration. *Patton v. J. C. Penney Co.*, 301 Or 117, 122, 719 P2d 854 (1986).

---

[4] Both defendant and Rowe declared bankruptcy, which delayed entry of the judgment. Judgment was entered against defendant on February 4, 1994. On June 7, 1994, the trial court granted plaintiff's motion to dismiss Rowe with prejudice, because of a settlement between plaintiff and Rowe.

■ Defendant concedes that plaintiff produced evidence of emotional distress.[5] However, he contends that there is no evidence that he personally intended to cause her to suffer that distress or that the means he and Rowe used to extract the confessions from plaintiff amounted to outrageous conduct. He acknowledges that the requisite intent can be inferred from outrageous conduct. *Bodewig v. K-Mart, Inc.*, 54 Or App 480, 488, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982).

■ Whether conduct is socially tolerable is a fact specific inquiry, which we review on a case-by-case basis, "considering the totality of the circumstances involved, to determine whether it constitutes an extraordinary transgression of the bounds of socially tolerable conduct." *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994).

■ The facts, viewed most favorably to plaintiff, would permit a jury to find that defendant knew that plaintiff was upset when he entered the interrogation room, that he knew that she had already endured nearly three hours of interrogation before he arrived, and that she had already admitted to taking $4,000 worth of merchandise, lottery tickets and cash from the market. Nonetheless, both defendant and Rowe continued to press plaintiff to make additional admissions. They repeatedly told plaintiff that they knew that there was more that she was not telling them, despite defendant's admission that he had no evidence that plaintiff had, in fact, taken merchandise or lottery tickets. Defendant also admitted that he did not know the bookkeeping methods used by the Nunns, how they controlled inventory or how employees made purchases from the market. He further admitted that he did not know that the Nunn family was allowed to take merchandise from the store without paying the cashier, and that he did not attempt to verify that lottery ticket sales matched the alleged thefts by plaintiff.

Plaintiff testified that she confessed only because she wanted to go home and that she was intimidated by the

---

[5] Plaintiff testified that in the months following the incident that she mostly stayed inside her home, with the curtain drawn; that she lost most of her hair; that she was unable to seek employment; and that a psychiatrist prescribed antidepressant drugs for her.

interrogation. She believed that defendant and Rowe had the authority to decide if she would go home or to jail that evening. Plaintiff also testified that she felt she was under duress, was coerced into signing the promissory note and that she was told that she must sign it in order to be able to go home.

We are persuaded that there was evidence from which a jury could find that defendant's course of conduct was intended to intimidate and coerce plaintiff into the confession she made and that the necessary consequence of that conduct would cause her emotional distress. A factfinder could, therefore, decide that defendant intended that consequence. There was also evidence from which a jury could conclude that defendant's conduct exceeded the bounds of social toleration. The trial court did not err in denying defendant's motion for a directed verdict on this claim.[6]

■ ■   Defendant next assigns error to the trial court's denial of his motion for a directed verdict on plaintiff's false imprisonment claim. False imprisonment is "the unlawful imposition of restraint on another's freedom of movement." *Walker v. City of Portland*, 71 Or App 693, 697, 693 P2d 1349 (1985). Restraint may be accomplished by actual or apparent physical barriers, compulsive physical force, a threat to apply physical force, or assertion of legal authority. *Gaffney v. Payless Drug Stores*, 261 Or 148, 492 P2d 474 (1972). Restraint need not be for more than a brief time. *Lukas v. J. C. Penney Co.*, 233 Or 345, 353, 378 P2d 717 (1963).

Defendant maintains that plaintiff returned to the store voluntarily, that she never asked or tried to leave the room in which the interrogation occurred and that she was allowed to use the telephone and to receive a telephone call from her husband. He also maintains that plaintiff was offered the opportunity to reschedule the interrogation, but declined.

---

[6] Defendant concedes that if his motion for a directed verdict on the claim of intentional infliction of emotional distress was properly denied, then his motion for a directed verdict with respect to punitive damages for that claim was also properly denied.

■ Although this appeal is based on plaintiff's claims against defendant, his conduct cannot be considered in isolation and must be interpreted in the context of Rowe's conduct as well.[7] Plaintiff testified that Rowe showed her a badge and asked her to return to the market. When she asked him if she could call her mother-in-law, Rowe followed her to the front of the store where the phone was located and positioned himself between plaintiff and the door. Plaintiff did not feel that she was free to leave the market. Rowe then directed her to the storage room in the back of the market, told her to sit on a crate and positioned himself between her and the only door. Rowe told plaintiff several times that it was up to him to decide whether she would go home or go to jail that evening. Plaintiff was allowed to receive only one telephone call during that time. She did not feel that she was free to leave the storage room and she believed that Rowe was somehow associated with the police. Defendant joined Rowe and plaintiff about three hours after the interrogation began. He took advantage of the situation created by Rowe and continued the interrogation.

Plaintiff's testimony is evidence from which a jury could find that defendant falsely imprisoned her. Plaintiff testified that she did not feel that she was free to leave, that she believed that the only way for her to go home that evening was to confess to the allegations made by Rowe and defendant and that she believed that defendant and Rowe were somehow associated with law enforcement. Although initially restrained by Rowe, defendant acquiesced in plaintiff's

---

[7] As a threshold matter, defendant argues that we should consider his conduct independent of the conduct of Rowe. He contends that, although plaintiff alleged that Rowe was defendant's employee and acted within the scope and course of his employment for defendant, she did not plead that defendant should be held vicariously liable for the actions of Rowe. Defendant further contends that plaintiff abandoned any theory of vicarious liability during the trial by arguing that defendant and Rowe were independently liable. He is correct. Plaintiff submitted and then withdrew her jury instruction on vicarious liability and she requested a jury verdict form that required a finding of separate liability for each defendant. Although the trial court read a summary of the pleadings to the jury, it did not instruct the jury on the law of vicarious liability and the jury could not have found defendant liable on that basis.

At oral argument we asked the parties to submit supplemental memoranda on whether plaintiff's release of Rowe meant that defendant could not be found liable under a theory of vicarious liability. In the light of plaintiff's withdrawal of the vicarious liability issue from the jury, we need not consider the implications of plaintiff's release of Rowe.

restraint and took advantage of it to continue the interrogation and extract from plaintiff an admission of taking an additional $5,000 in merchandise, lottery tickets and cash. The trial court did not err in denying defendant's motion for a directed verdict on this claim.

Defendant's third assignment is that the trial court erred in denying his motion for a directed verdict on his defense of probable cause to the allegation of false imprisonment. ORS 131.655 provides:

"(1) Notwithstanding any other provision of law, a peace officer, merchant or merchant's employee who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto *in a reasonable manner and for a reasonable time.*

"(2) If a peace officer, merchant or merchant's employee, with probable cause for believing that a person has committed theft of property of a store or other mercantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employee any civil or criminal action based upon the detention and interrogation, such *probable cause* shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time." (Emphasis supplied.)

Whether probable cause exists to believe that a person has committed theft of a merchant's property is a question of law if the facts are undisputed. If the facts are disputed, the court submits the evidence to the jury with instructions about what probable cause requires. *Fleet v. May Dept. Stores, Inc.,* 262 Or 592, 500 P2d 1054 (1972). Whether the detention and interrogation were done in a reasonable manner and for a reasonable time is, likewise, a question for the jury. *Lukas v. J. C. Penney Co., supra,* 233 Or at 362.

Here, the trial court denied defendant's motion on the ground that

"the probable cause affirmative defense is not solely dependent on probable cause. There has to be also a showing for the defendant to prevail of reasonableness in time and manner of the detention. And of course there's a lot of dispute about that."

The trial court subsequently instructed the jury on the statutory requirements of probable cause under ORS 131.655 and ORS 131.005(11), and on whether the detention and interrogation were conducted in a reasonable manner and for a reasonable time.

Defendant contends that, as a matter of law, he had probable cause to detain plaintiff, and that she failed to contradict his testimony concerning the reasons why he decided to detain and interrogate her: He was informed by the market's owner that he believed his employees were stealing; defendant performed "honesty shops" from which he concluded that plaintiff had failed to record a transaction; other employees told him that plaintiff had been stealing; and Rowe told him that she had confessed to stealing.

■ Even if we agree with defendant that he had probable cause to believe that plaintiff had committed theft, the trial court did not err in denying his motion for a directed verdict. The parties presented conflicting evidence about whether the detention and interrogation were done in a reasonable manner and for a reasonable time. That was a question for the jury.

Finally, defendant assigns error to the trial court's denial of his motion to remove plaintiff's claim for punitive damages for false imprisonment from the jury.

■ Punitive damages are justified on the theory of determent. *Noe v. Kaiser Foundation Hospital*, 248 Or 420, 425, 435 P2d 306 (1967). They are proper where there has been a "particularly aggravated disregard" of the rights of the victim. *Wolf v. Nordstrom*, 291 Or 828, 831, 637 P2d 1280 (1981).

Defendant argues that, even if plaintiff's confinement was wrongful, he did not cause it and that the "worst that can be said about [defendant's] involvement is that he came on the scene when the interview was nearly completed." He contends that he did not refuse to allow plaintiff to communicate with others, that he did not verbally abuse her, that he did not argue with her, and that he did not bring about or threaten to bring about criminal proceedings. Therefore, he maintains, he was entitled to a directed verdict on plaintiff's claim for punitive damages.

We disagree. There was evidence from which the jury could have found that defendant knew that plaintiff was upset when he went into the room in which she was being interrogated, that he knew that she had already endured nearly three hours of interrogation, that she had already admitted to taking $4,000 worth of merchandise, lottery tickets and cash from the market and that he, nonetheless, continued to press her for additional admissions. He told plaintiff that he "knew" that there was more that she was not telling them, even though he admitted at trial that he had no evidence that plaintiff had, in fact, taken merchandise or lottery tickets. The jury could have found that, during the time that defendant was in the room with plaintiff, he acted with malicious intent to intimidate and coerce her. The trial court did not err in denying defendant's motion for a directed verdict on plaintiff's claim for punitive damages for false imprisonment.

Affirmed.