**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

STEPHEN SANTORO,

        Plaintiff-Appellant,

 v.

OCWEN LOAN SERVICING, LLC,

        Defendant-Appellee,

 and

KITSAP PROPERTY PRESERVATION
LLC; ALTISOURCE FULFILLMENT
OPERATIONS, INC.,

        Defendants.

No.   20-35484

D.C. No. 6:14-cv-00522-AA

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted May 12, 2022
Portland, Oregon

Before: BERZON and CHRISTEN, Circuit Judges, and BLOCK,[**] District Judge.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

Stephen Santoro appeals the district court's dismissal for failure to state a claim of his trespass and intrusion upon seclusion claims against Ocwen Loan Servicing, LLC ("Ocwen"), as well as the district court's grant of summary judgment to Ocwen on Santoro's conversion and Unlawful Trade Practices Act ("UTPA") claims.[1] We affirm in part and reverse in part.

1.      The district court erred in dismissing Santoro's trespass and intrusion upon seclusion claims for failure to state a claim. The district court reasoned that Santoro "consented to entry if '[Plaintiff] fail[ed] to perform the covenants and agreements contained in [Deed of Trust]," and that Santoro "defaulted, and thus failed to perform the covenants and agreements within the Deed of Trust." *Santoro v. Ocwen Loan Servicing, LLC*, No. 6:14-CV-0522-TC, 2015 WL 4920827, at *1 (D. Or. Aug. 14, 2015) (alterations in original) (quoting paragraph 9(a) of the deed of trust).

Santoro maintains that paragraph 9(a) of the deed of trust is unenforceable because it violates Oregon Revised Statutes § 86.010 by authorizing Ocwen "to recover possession of the property without a foreclosure and sale." Or. Rev. Stat. § 86.010; *see Teal v. Walker*, 111 U.S. 242, 252 (1884); *Invs. Syndicate v. Smith*,

---

[1] Because the parties are familiar with the facts of the case, we do not recite them, except to the extent necessary to aid in understanding this disposition. To the extent that record information referenced in this disposition has been filed under seal, we hereby unseal it for the limited purpose of this disposition.

105 F.2d 611, 618–21 (9th Cir. 1939); *Kerr v. Miller*, 159 Or. App. 613, 621 (1999). The Oregon Supreme Court has not decided whether a lender "recover[s] possession" of a mortgaged property when it changes the locks and requires the borrower to go through the lender to regain access to the property. Or. Rev. Stat. § 86.010. Our task is to predict how the Oregon Supreme Court would resolve that question. *See Isabel v. Reagan*, 987 F.3d 1220, 1229 (9th Cir. 2021).

We are aided by a recent decision of the Washington Supreme Court, which addressed the same question in a strikingly similar factual and statutory context. *See Jordan v. Nationstar Mortg., LLC*, 185 Wash. 2d 876, 888–89 (2016). Washington's lien theory statute is materially identical to Oregon's. *Compare* Or. Rev. Stat. § 86.010 *with* Wash. Rev. Code § 7.28.230(1). In Oregon, as in Washington, "a 'possessory' interest always is marked by some degree of control and some degree of exclusivity, [but] neither absolute control nor absolute exclusivity is required." *Power Res. Coop. v. Dep't of Revenue*, 330 Or. 24, 31 (2000); *see Jordan*, 185 Wash. 2d at 887. And Oregon courts, like Washington courts, have held that changing locks is indicative of taking possession of property. *Compare Farmer v. Groves*, 276 Or. 563, 566–67 (1976); *Legg v. Allen*, 72 Or. App. 351, 356 (1985); *Smith v. Topits*, 64 Or. App. 799, 803 (1983), *with Jordan*, 185 Wash. 2d at 887–88. Based on these similarities, we conclude that the Oregon Supreme Court would likely agree with the Washington Supreme Court that a

lender recovers possession of a mortgaged property when it changes the locks and requires the borrower to go through the lender to regain access to the property. *See Jordan*, 185 Wash. 2d at 889. By authorizing Ocwen to take those steps prior to a judgment of foreclosure, paragraph 9(a) of the deed of trust violates Oregon Revised Statutes § 86.010 and cannot be enforced. *See Teal*, 111 U.S. at 252; *Jordan*, 185 Wash. 2d at 889.[2]

On appeal, Ocwen invokes paragraph 9(c) of the deed of trust, stating that the lender may secure the property "[i]f . . . Borrower has abandoned the Property." Ocwen's reliance on this provision fails for two reasons. First, Ocwen waived the argument by failing to cite paragraph 9(c) when it moved to dismiss Santoro's trespass and intrusion on seclusion claims in district court. *See, e.g.*, *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021). Second, at the motion-to-dismiss stage, the factual allegations in the operative complaint are taken as true. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019). Santoro's allegations, taken as true, show that he had not abandoned the property.

2. The district court properly granted summary judgment to Ocwen on Santoro's conversion claim. A "principal ordinarily is *not* liable in tort for physical

---

[2] We deny Santoro's motion for certification to the Oregon Supreme Court, Dkt. No. 4.

4

injuries caused by the actions of its agents who are not employees." *Vaughn v. First Transit, Inc.*, 346 Or. 128, 137 (2009). Oregon courts analyze four factors to distinguish between employees and independent contractors in the context of determining vicarious liability for tortious conduct: "(1) evidence of the right to or actual exercise of control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Buckel v. Nunn*, 131 Or. App. 121, 125 (1994) (citing *McQuiggin v. Burr*, 119 Or. App. 202, 207 (1993)).

The contracts between Ocwen and Altisource Solutions, Inc. ("Altisource"); Altisource and Kitsap Property Preservation LLC ("Kitsap"); and Kitsap and Carl Faris do not show that Ocwen exercised a sufficient degree of control over Altisource, Kitsap, and Faris to establish an employer-employee relationship between Ocwen and those entities and individuals. For example, although Ocwen required Altisource to complete 90% of assigned tasks within short time periods, Altisource could decide which tasks to prioritize. And although Ocwen performed "quality assurance checks" at least annually, it did not make any site visits and so did not directly supervise the performance of the work.

The method-of-payment factor is neutral. Ocwen's contract with Altisource listed prices per task, such as lock changing. "[W]here payment is not hourly or per-job, the method of payment is a neutral factor." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1046 (9th Cir. 2014) (citation omitted). The

equipment factor is also neutral because there is no evidence in the record about who provided equipment. Finally, the record does not establish that Ocwen had the right to terminate the entire contract at will. The lack of an unqualified right to terminate supports a finding of independent contractor status. *Id.*

The undisputed facts demonstrate that Ocwen did not employ Altisource and, by extension, did not employ Kitsap or Faris. Because Santoro has not established a basis for holding Ocwen vicariously liable for Faris's alleged tortious conduct, the district court properly granted summary judgment to Ocwen on Santoro's conversion claim.

3. The district court erred in granting summary judgment to Ocwen on Santoro's UTPA claim. A "person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person . . . [p]erforms service on or dismantles any goods or real estate if the owner or apparent owner of the goods or real estate does not authorize the service or dismantling." Or. Rev. Stat. § 646.608(1)(m). To make out a claim for damages under UTPA, Santoro must show that Ocwen's use of an unlawful trade practice was "willful" and caused Santoro "an ascertainable loss of money or property, real or personal." *Id.* § 646.638(1). "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." *Id.* § 646.605(10). Proving that a defendant should have known its conduct was a

6

violation of UTPA "requires no more than proof of ordinary negligence." *State ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375, 385 (1980).

Paragraph 9(c) of the deed of trust authorized Ocwen to secure the property "[i]f . . . Borrower has abandoned the Property." The magistrate judge reasoned that Santoro had not shown that Ocwen's conduct was willful because "Ocwen had a reasonable basis for believing that the property was vacant as Ocwen received notice from Altisource on or around February 17th[,] 2014 that it was vacant." *Santoro v. Ocwen Loan Servicing, LLC*, No. 6:14-CV-00522-TC, 2019 WL 1450532, at *3 (D. Or. Feb. 28, 2019).

But the pertinent question under the deed of trust was not whether anyone was currently occupying Santoro's house but whether he had "abandoned" it. To abandon a property is to "relinquish or give [it] up with the intention of never again reclaiming one's rights or interest in [it]," or to "desert or go away from [it] permanently." *Abandon*, *Black's Law Dictionary* (11th ed. 2019). Ocwen had contracted with Altisource to determine the "apparent occupancy status" of the property, but a determination that the property "apparent[ly]" was not occupied would not have satisfied the contractual condition that Santoro had abandoned the property. A homeowner may leave his home unoccupied—if, for example, he decides to rent it out and moves out before the renter moves in—without abandoning it.

7

Additionally, Santoro raised a triable issue of fact on whether Ocwen should have known that he had not abandoned the property. The property inspection report Altisource provided in February 2014 showed a photo not of Santoro's house but of a different property. The report indicated that the property was vacant, the utilities were off, and the exterior was in "[p]oor" condition. In contrast, the inspection report Altisource prepared less than a month earlier showed a photo of Santoro's house, and indicated that the property was occupied, the utilities were on, and the condition was "[g]ood."

Ocwen maintains it sent Santoro a "15 Day Vacancy Letter" and received no response. Santoro alleges he never received the letter. As evidence it sent the letter, Ocwen points to a note in its records stating, "15 Day Vacancy Letter Sent." But Ocwen could not produce a copy of the letter or proof it had been mailed, although its representative testified it generally kept copies of such letters on file. Based on the obvious discrepancies in Altisource's reports and the evidence on the letter, a jury could reasonably find that the letter was never mailed and that Ocwen lacked a sufficient basis for concluding Santoro had abandoned the property.

Ocwen contends that its actions cannot be deemed willful because Altisource was the party contractually responsible for making the necessary determinations. But Ocwen's delegation of responsibility to Altisource could not discharge Ocwen's duty under the deed of trust unless Santoro so agreed. *See*

8

*Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 411 (1995) (to discharge an obligor's original duty, the obligee must accept the new contract "in satisfaction of the obligor's existing duty," quoting 6 Arthur L. Corbin on Contracts § 1297 (1962)); Restatement (Second) of Contracts § 318(3) (1981) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor."). Further, although Ocwen contracted with Altisource to determine whether the property was occupied, the contract did not assign Altisource the task of determining whether the property was *abandoned* before securing it. Instead, the contract provided that Altisource would preserve and secure "vacant unsecured properties." Thus, under the deed of trust, Ocwen ultimately retained the duty to determine whether the property was abandoned, and it could not simply rely on Altisource's assertion that the property was "[v]acant." Accordingly, a jury could reasonably find that Ocwen should have known additional investigation was needed before it could conclude the property was abandoned.

For these reasons, summary judgment on Santoro's UTPA claim was not appropriate. Fed. R. Civ. P. 56(a).

Costs are taxed against Ocwen. *See* Fed. R. App. P. 39(a)(4).

**REVERSED in part; AFFIRMED in part; and REMANDED.**

9